(55 South. 369.)

No. 18,288.

FRED MILLER BREWING CO. v. ASCENSION ICE CO., Limited.

(April 28, 1911.    Rehearing Denied May 22, 1911.)

*(Syllabus by the Court.)*

1. ESTOPPEL (§ 63*)—EQUITABLE ESTOPPEL.

Whoever, by words or conduct, willfully causes another to believe in the existence of a certain state of things, and induces him to act on that belief so as to alter his own previous position, is concluded from averring against the latter a different state of things as existing at the same time.

[Ed. Note.—For other cases, see Estoppel, Dec. Dig. § 63.*]

2. ESTOPPEL (§ 70*)—LIEN—EQUITABLE ESTOPPEL.

Where an indorsed note was to be surrendered on the execution of a first mortgage and lien on certain property, and subsequently the maker of the note, represented by the indorser, executed a mortgage on the premises, and the indorsed note was thereupon surrendered, *held*, that the indorser thus released is concluded from asserting a prior vendor's lien on certain machinery on the mortgaged premises.

[Ed. Note.—For other cases, see Estoppel, Cent. Dig. §§ 183–187; Dec. Dig. § 70.*]

Appeal from Twenty-Seventh Judicial District Court, Parish of Ascension; R. J. Chauvin, Judge ad hoc.

Action by the Fred Miller Brewing Company against the Ascension Ice Company, Limited, in which G. J. Labarre filed a third opposition. Judgment for third opponent,

and plaintiff appeals.    Reversed, and third opposition dismissed.

T. Jones Cross, for appellant.    Marks, Wortham & Le Blanc, for appellee.

LAND, J.    Plaintiff (hereinafter styled the "Brewing Company") sued out executory process on a certain promissory note for $20,000, dated September 11, 1908, executed by the defendant (hereinafter styled the "Ice Company"), and secured by a special mortgage on a tract of land, at Donaldsonville, La., with all the buildings, improvements, and machinery thereon, constituting the plant of the defendant for the manufacture of ice.

The Arctic Ice Machine Company (hereinafter styled the "Arctic Company") filed a third opposition claiming a vendor's privilege on all the ice manufacturing machinery on the mortgaged premises to secure a certain promissory note of the Ice Company for $5,375, dated November 11, 1907, payable one year after date to the order of the Arctic Company, and bearing 7 per cent. per annum interest from date until paid, which said note was given in part payment of the purchase price of said machinery. After the filing of said third opposition, the judicial sale of the property was postponed, and said note was subsequently paid by Gus. J. Labarre, the indorser, who thereupon filed a third opposition in his own behalf, as the subrogee of the Arctic Company. Labarre was president of the Ice Company.

For answer to the opposition of Labarre, the plaintiff, after pleading the general issue and several special defenses which need not be recited, averred that Labarre was estopped to set up said note as a claim against the Ice Company, secured by lien and privilege superior to the mortgage held by plaintiff for reasons substantially as follows:

That in October, 1907, plaintiff by virtue of a contract with the Ascension Ice Company represented by its president, Gus. J. Labarre,

advanced to said company the sum of $10,-000, evidenced by the note of the defendant company, and agreed to advance an additional sum of $10,000 as soon as the plant of the aforesaid company was completed, to be secured by a first lien and mortgage upon the whole completed and unincumbered plant.

That said additional sum was advanced to the defendant on September 11, 1908, and on that date the plaintiff took, as security for the payment of said loan of $20,000, what was represented to be and what purported to be a first mortgage upon said completed and unincumbered plant.

That throughout the transactions the defendant was represented by its president, Gus. J. Labarre, who well knew, when said additional advances were made and mortgage was executed, that all the ice manufacturing machinery on the premises was subject to a vendor's lien and privilege in favor of the Arctic Company to secure a note for the sum of $5,375 with accrued interest, and that the plaintiff was ignorant of the existence of said incumbrance, which was not of record.

That the defendant company was insolvent at the time, and Labarre was indorser on the vendor's lien note held by the Arctic Company, and was also indorser on the defendant's note for $10,000, as above stated.

That the plaintiff, believing that the premises, including machinery, was unincumbered, accepted said mortgage thereon, and surrendered said note for $10,000 on which the said Labarre was indorser, and advanced to the defendant the additional sum of $10,000.

That the said Labarre should have disclosed to the plaintiff the existence of said prior lien and privilege on said machinery, and, by not doing so, acted in bad faith, to the damage of the plaintiff in the amount of the sum secured by said lien and privilege.

The case was tried, and there was judgment in favor of Labarre, third opponent. Plaintiff has appealed.

The Ice Company was organized in 1907, and purchased a piece of real estate in Donaldsonville, and gave its notes for the credit portion of the purchase price. These notes were secured by special mortgage and vendor's privilege on the property thus acquired.

All the ice manufacturing machinery was purchased from the Arctic Company; the credit portion of the price being represented by two notes for $5,375 each, indorsed by Gus. J. Labarre personally, he being at the time the president of said Ice Company.

In July, 1907, the said Ice Company made a contract with the Brewing Company for the exclusive purchase and sale of beers of its manufacture.

On October 12, 1907, an agreement was made between the Brewing Company and Ice Company, by which the former agreed to lend to the latter the sum of $20,000. Of this amount the sum of $10,000 was advanced on the same day, and the other half was to be advanced as soon as the ice plant was completed, at which time the Ice Company was to execute and deliver to the Brewing Company "a mortgage on the whole completed and unincumbered plant, same to be a first lien and to secure the said indebtedness of twenty thousand dollars."

On May 22, 1908, Mr. Labarre wrote a personal letter to Mr. Miller of the Brewing Company, from which we make extracts as follows:

"After going over our business to-day, I find that we owe two notes $5,500 each, one due since 17 and the other due six months with 7 per cent. interest, also a balance of $2,500 on the land on which the plant is erected, all other accounts have been settled that bear on the plant. Now viewing the fact that our plant costs us much more than we expected, I want to ask you to make us a loan of $13,500 instead of $10,000 more and take a clean mortgage for $23,500 instead of $20,000. This would fix us up nicely because the Arctic people are after us for an immediate settlement of their account or note that is now due them."

On May 25, 1908, the Brewing Company replied, declining to agree to advance the additional $3,500, and suggesting that the

amount be made up between the stockholders. In July, 1908, the Ice Company forwarded an abstract of the property to be mortgaged, and advised the Brewing Company that the Arctic Company was pressing for a settlement. Later the Ice Company wrote that it was ready to consummate the deal for the loan of the additional $10,000.

The mortgage for $20,000 was finally executed on September 11, 1908, and the Brewing Company surrendered the note for $10,000 given for the original loan to the Ice Company, and also one of the notes held by the Arctic Machine Company which had been paid by the Brewing Company on the order of the Ice Company, and gave its check to the Ice Company for the remainder, amounting to $3,834.68. The amount secured by mortgage and vendor's privilege on the tract of land was paid by the Ice Company. There was left outstanding in the hands of the Arctic Company another note for $5,375, secured by vendor's privilege on the ice manufacturing part of the machinery.

Two officers of the plaintiff company testified that, had they known that there were any prior incumbrances on the property, the additional loan would have been refused. Their ignorance of the outstanding vendor's lien note due the Arctic Company for $5,375 is shown by the fact that their company paid the defendant $3,834.68 in cash. Surely the plaintiff would have retained this amount if its officers had even suspected the existence of a prior lien on the machinery for nearly $6,000. Plaintiff expected and was entitled to receive a first mortgage on the unincumbered plant. In his letter of May 22, 1908, Labarre wrote that the total indebtedness bearing on the plant consisted of two notes for $5,500 each and $2,500 balance on the tract of land, and asked for a loan of $13,500 instead of $10,000, so that the plaintiff could "take a clean mortgage on the whole plant as originally agreed." The writer added:

"This would fix us up nicely because the Arctic people are after us for an immediate settlement on our account or note that is now due them."

As a matter of fact the two notes were for $5,375 each, and both were payable to the Arctic Company, which was, however, mentioned in connection with only one of them. Labarre asked for an additional loan of $3,500 to enable his company to take up all three of the notes. This loan was refused, and the Ice Company was advised that its stockholders would have to pay the additional sum necessary to cancel all the incumbrances on the plant.

Under the original agreement the Brewing Company was clearly entitled to a first mortgage on the completed unincumbered plant. Labarre was not only a party to this executed contract, but indorsed the note for $10,000 which was delivered to the Brewing Company. Hence Labarre was one of the codebtors to the extent of said sum, with interest. This note for $10,000 was to be surrendered on the execution of a mortgage for $20,000 on the completed and unincumbered plant. When the Ice Company notified the Brewing Company that it was ready to consummate the deal, the necessary inference was that the Ice Company was prepared to clear the property of all prior mortgages and liens out of the proceeds of the additional loan or otherwise. The Ice Company gave notice of the past-due lien note held by the Arctic Company, but was silent as to the other lien note maturing in November, 1908, and thereby induced the Brewing Company to believe that it had paid the only lien note outstanding, and to send to the Ice Company a check for $3,834.38. Labarre must have known that the money was sent through a misapprehension of the facts. It was his plain duty to have given the Brewing Company immediate notice of the existence of the last lien note and to have held the money subject to further instructions. Instead of so doing, Labarre kept silent, and the

money went into the coffers of the embarrassed, if not insolvent, Ice Company. Labarre acted not only as president, but in his individual interests, and by the transaction secured his release as indorser on the note for $10,000, with accrued interest. He was not entitled to such release under the original agreement so long as a prior lien existed on the property.

[1, 2] We think that Labarre is estopped by his acts, conduct, and silence, which induced the Brewing Company to believe that there was no prior lien on the property. Montague v. Weil, 30 La. 53; Marsh v. Smith, 5 Rob. 523. We also think that Labarre, having been released as indorser on the note for $10,000 on the assumption that the mortgage, as provided in the contract, had been given on the unincumbered plant, cannot be heard to assert the contrary. Labarre was indorser on the lien note which he now claims to hold, and was also indorser on the $10,000 note given by the Ice Company to the Brewing Company. He was to be released on the latter in the event the lien was canceled, and a first mortgage for $20,000 given on the property.

It is therefore ordered that the judgment below be reversed, and it is now ordered that the third opposition of Gus. J. Labarre be dismissed, with costs in both courts.