PROVOSTY, J.
In this suit the plaintiff, William Kyle, has sued out executory process against the defendant, the Bayou Sale Planting & Drainage Company, a former owner of the property in question, for the accrued and past due interest upon a mortgage debt, upon an act of mortgage containing the pact de non alienando; and the present owner and possessor of said property, the South Bend Company, has enjoined the proceeding.
By three successive private sales, the said property, consisting of several sugar plantations, passed from John R. Todd to the Ellerslee Planting Company, from this company to Wm. F. Williams, and from the latter to the defendant in this suit, the Bayou Sale Planting & Drainage Company; each of these successive purchasers assuming in turn to pay several notes aggregating $55,000, which John R. Todd had issued, and secured by mortgage on said property. The sale by Williams to the defendant, the Bayou Salé Planting & Drainage Company, was of date June 9, 1910, and the consideration of it, in addition to the assumption of said Todd-mortgage debt of $55,000, was $110,000 for which the purchaser, the Bayou Sale Planting & Drainage Company, issued its three notes of $36,666, each, secured by vendor’s privilege and mortgage on the property. In making this purchase and executing the' notarial act of purchase, the said company acted through Its president, W. W. Wall. He, on March 7, 1911, acquired two notes of $10,-000 each, part of the John R. Todd mortgage notes of $55,000. On the 18th of April, 1911, he acquired from the plaintiff, William Kyle, two other notes of the same series, one for $20,000 and the other for $7,628. By the two notarial acts by which he purchased these four notes he subordinated the mortgage securing them to the $110,000 mortgage given by his company as hereinabove stated for the purchase price of the said property.
The plaintiff,-Kyle, at the same time that he transferred the said two Todd notes for $27,626 to W. W. Wall, agreed to purchase one of the $36,666 notes of the $110,000 mortgage, and this agreement had progressed to the point of a check having been given for the price when Kyle refused to consummate the purchase, having discovered that, while the said $36,666 note recited that the interest on it was payable annually, the act of mortgage securing it recited that said interest was payable at the maturity of the note, 10 years from date. The intention of the .parties had been that this interest should be payable annually, as stipulated on the face of the note, and the act of mortgage had not been made. to so recite simply through an error of the notary. In order to correct this error, and induce Kyle to purchase the $36,666 note, the Bayou Sale Planting & Drainage Company authorized its president, W. W. Wall, to execute a notarial act so providing; and this notarial act was duly executed by Wall for his said company, and was duly recorded on September 27, 1911; and Kyle then completed his purchase of the $36,666 note.
When the interest for the first year matured on this note, it was not paid; and the plaintiff, Kyle, in November, 1912, sued out the executory process enjoined in this suit.
The grounds of the injunction are, that in March, 1911, a few days after W. W. Wall had acquired the two John R. Todd mortgage notes of $10,000 each, part of the $55,-000 John R. Todd mortgage, subject to which the successive sales of the property had been made, said notes were sold and transferred by Wall to P. H. Hardy; that in July, 1912, executory process was sued out by Hardy, *367 acting through his friend, George A. Hero, on said notes; that in September, 1912, in due course of said executory proceedings, said property was adjudicated at sheriff sale to the said Hero; that Hero, refusing to accept title, P. H. Hardy, the real party in interest, was substituted to him as adjudieatee, and title made out accordingly; that subsequently the said property was sold by Hardy at private sale to the South Bend Company, the plaintiff in injunction; that while, at the said sheriff’s sale, the said property passed to Hardy subject to the $110,000 mortgage, part of which was represented by the $36,-666 note held by Kyle, for the interest upon which Kyle had caused the said executory process to issue, it had passed subject to said mortgage only as recorded, that is to say, with the interest thereon payable only at the "end of 10 years, because Hardy, holder of' the two $10,000 mortgage notes of the Todd mortgage, for the payment of which the said sheriff’s sale was made, (had not been a party to the agreement of September, 1911, by which the interest on the said $110,-000 mortgage of the Bayou Sale Planting & Drainage Company had been made payable annually instead of after 10 years, and therefore the said two. mortgage notes held by him, for the payment of which the said sale was made, could not be affected by said agreement.
In answer to the foregoing, Kyle, the defendant in injunction, makes two contentions: First, that Hardy never was the own'er of said two mortgage notes, but was a mere person interposed for Wall, who continued to be owner of said notes, and as such was estopped from seeking to take advantage of the error in the act of mortgage which made the interest on the said three notes of $36,666 payable at maturity instead of annually, and was bound by the correction which had been subsequently made of said error, by means of which correction he had induced Kyle to purchase the said $36,666 note; and, second, that said property passed at said sale subject to the payment of said interest annually, even though Hardy was the true holder of said notes and the purchaser at said sale, because the certificate of mortgages read at the sale recited that said mortgage of $110,000 was the first upon the property, and bore interest payable annually, and the sheriff announced at the crying of the sale that the sale was being made subject to all mortgages which according to said certificate of mortgages ranked that of the seizing creditor; and that Hardy, in bidding at said sale, did so subject to the conditions thus announced by the sheriff.
When this case was before this court the first time, on exception of no cause of action (134 La. 232, 63 South. 886), the conclusion was reached that the rank of the mortgage creditors had to be determined from the order of the registry of the mortgages, and from the acts as recorded; and that the act by which the interest on the notes for $110,000 was made payable annually instead of in 10 years, could not affect the mortgage securing the two notes for $10,000 part of the John R. Todd mortgage, because recorded subsequently, and without the holder of these two $10,000 notes being a party to it; and that, therefore, the property had passed at the sale subject to the $110,000 only as bearing interest payable in 10 years. This court did not have before it then the questions at issue on the present appeal, namely: As to whether Hardy was the real owner of said two notes, or only the straw. man of W. W. Wall; and as to whether, regardless of what was in reality the order of the mortgages, the property did not pass at the sheriff’s sale subject to this interest on this $110,000 having to be paid annually, in view of the fact that the certificate of mortgages read by the sheriff at the sale so recited, and that the announcement was *369 made by tbe sheriff, at the crying, that the sale was being made subject to the mortgages as recited in the certificate of mortgages.
Dealing now with the latter question first, we will say that we do not think this error in the certificate of mortgages and in the manner of announcing the sale could affect the legal situation, which was, that in so far as the interest on the said $110,000 mortgage was payable annually instead of in 10 years, said mortgage was subordinate to that securing the two $10,000 notes for the payment of which the sale was being made, it having been in that feature of it recorded subsequently. Said error could not have the legal effect of inverting the order of the mortgages. The holder of the two $10,000 notes, whether Hardy or Wall, had the right to cause said property to be seized and sold free of the change by which the interest on the $110,000 had been made payable annually instead of in 10 years, and any errors in that connection on the part of the clerk of court in making the certificate of mortgages or of the sheriff in crying the sale could not affect that right. Fortier v. Slidell, 7 Rob. 398; Loucks v. Union Bank, 2 La. Ann. 617. Perhaps if some third person had purchased at the sale, such third person would not be in a position to claim that he had bought on conditions different from those on which the sale was made, as recited in the certificate of mortgages read at the sale; but the right of the seizing creditor to buy free of this change made in the $110,000 mortgage and recorded subsequently to the recordation of his own mortgage, could not be affected, we repeat, by said error in said certificate. As to him, the most that could be contended would be that said error constituted such an irregularity in the making of the sale as might furnish good ground for setting it aside.
The said second contention of the defendant in injunction, Kyle, involves the question of fact, whether Hardy was or not a mere-person interposed for Wall, and also the-question of law, whether Wall himself would be estopped from claiming that the interest, on the said $110,000 mortgage was payable-in 10 years and not annually. First, as to-the latter question.
There is nothing in the record to show that the agreement on the part of the Bayou Sale Planting & Drainage Company to correct the error in the $110,000 act of mortgage with respect to the manner in which the interest should be payable, formed any part of, or entered in any way, shape or form into, the consideration of the contract or agreement, by which Wall individually acquired the said two $10,000 mortgage notes which primed the said $110,000 mortgage. So far as the record shows, Wall, individually, as purchaser of the said two $10,000 notes, was under no obligation whatsoever, moral or legal, to consent to subordinate the mortgage securing the said two notes to the mortgage securing the $110,000 of notes; so far as the record shows, he did so as a mere gratuitous act, as a thing he was neither legally nor morally under any obligation to-do. Nor is there anything in the record fo show that at the time he did this he did not know that the act of mortgage to which he thus consented gratuitously to subordinate his own mortgage called for a payment of interest in 10 years and not annually, and did not have that fact present to his mind. In other words, there is nothing in the record to 'show that it was to this $110,000 as-bearing interest payable annually, and not to this same mortgage as bearing interest payable in 10 years, that he consented to subordinate his own mortgage. On the face of the papers it was to the latter that he consented, namely, he consented to the subordinating of the one mortgage to the other as the two mortgages stood recorded — i. e.,. *371 just as they, were; and the question which arises is as to whether his consent is to be limited to what thus appeared on the face of the papers, and to which he expressly consented, or is to be extended to something else which he may or may not have had in his mind, namely, subordinate his own mortgage to this $110,000 not as recorded, but as bearing interest payable annually. It may well be that his intention was to do the latter, but nothing shows, or proves it; and in the absence of such proof we cannot presume it, for the legal principle which comes ■into play in such a case is the maxim nemo presumitur donare. A person is not to be presumed to have intended to do gratuitously more than he has expressly consented to •do. Wall, in this case, expressly consented to subordinate his mortgage to this $110,000 mortgage only as this mortgage existed on the face of the papers; or in other words, only as this mortgage legally existed as to third persons; and this means as recorded, for mortgages exist as to third persons only as recorded.
The subsequent correction of this $110,000 mortgage act so as to make the interest payable annually was not the act of Wall himself, individually, but of the Bayou Sale Planting & Drainage Company of which he was president; and no connection whatever is shown between this act of correction, and the act passed one month previously by which Wall subordinated his mortgage. By this subsequent correction Wall did not in .any way extend or -amend the previous act by which he had consented to subordinate his mortgage. And by this subsequent act he did not mislead any one, nor induce any one to change his position to his prejudice; so that this later act cannot afford any ground for estoppel.
In this last connection a very broad distinction exists between the purchase by Wall of the two $10,000 notes, and his subsequent i purchase from Kyle of the notes of the same series for $27,628. The latter purchase and the purchase by Kyle of the $36,666 note formed part of one transaction, so that Kyle may be said to have been induced to buy the $36,666 by the agreement on the part of Wall to subordinate the said $27,628 to the said $110,000. Kyle certainly understood that in selling his said notes of $27,628, and in purchasing the said note of $36,666, the said notes he was selling were to be subordinated to the note he was purchasing as bearing.interest annually. This is shown by the fact that he refused to consummate the purchase until the correction in the $110,000 mortgage act had been made. But this transaction involved in no way the other transaction by which, one month previously, Wall had subordinated his two $10,000 notes to the $110,000 mortgage. It may be that Kyle supposed that the previous act of subordination of mortgage would have to be construed as he is now, in this case, asking the court to construe it; but if such was his understanding he imparted it to no one, so far as the record shows. It may well be also that Wall understood that the act of correction was to have a retroactive effect as to himself for the two notes he held, but nothing shows that he did so understand. Nothing shows that he gave the matter a thought ;• and as he occupied no trust relation whatever towards Kyle, he was under no obligation to give thought to the matter, or, If he did, to communicate his thoughts on the subject to Kyle. For all that appears by the record, and for all this court knows, Kyle and everybody else may have understodd that the $55,000 Todd mortgage was being subordinated to the change in the manner in which the interest on the $110,000 mortgage was to be paid only in so far as the $27,628 was concerned, not in so far as the rest of the said Todd mortgage was concerned; not any more in so far as the $20,000 previously *373 purchased by Wall was concerned than in so far as the rest of the said Todd mortgage to the amount of $7,372 outstanding was concerned.
Estoppel may, of course, result as well from silence where it is one’s duty to speak (Fred Miller Brewing Co. v. Asension Ice Co., 128 La. 779, 55 South. 369) as from actual misrepresentation; but this happens only where both parties are not possessed of equal information or opportunity for information, which was not the situation in this case. Kyle knew, as well as Wall did, that $27,372 of the $55,000 Todd mortgage was outstanding, and that the holders of the notes thus outstanding would not be bound by any agreement the Bayou Sale Planting and Drainage Company and he might make for changing the manner in which the interest on this $110,000 mortgage should be payable. Wall was under no legal or moral duty .to speak to him on that point. Perhaps Kyle knew, or supposed he knew, that Wall him•self was holder of $20,000 of these outstanding notes, but nothing shows that he did." Nothing shows that he did not suppose that the said $20,000 notes held by Wall or by Hardy were not still held by the bank from which Wall acquired them.
There can also be no doubt that an act of ratification or reformation of instrument relates back to the date of the ratified act or reformed instrument. But it stands to rea.son that an act of ratification or reformation cannot affect the rights of third persons not parties to it. C. C. art. 2272. The parties to a mortgage act cannot by a subsequent .act of reformation increase the amount of a recorded mortgage so as to displace the rank of a mortgage recorded in the meantime. The first mortgage creditor and the mortgage debtor cannot by an act of their own, be that act one of reformation or what not, increase •the amount of the first mortgage to the detriment of the second mortgage. Kyle and the Bayou Sale Planting and Drainage Company could not by an act between themselves increase the amount of this $110,000 to the detriment of the holders of this $20,000 held by Wall or Hardy by changing the manner in which the interest should be payable.
Wall or Hardy was no party to the act by which this change was made; and Wall was under no obligation to make himself a party to the act individually. As already stated, it may be that Kyle knew, or thought he knew, that Wall was holder of the $20,000 notes, and that he thought that Wall would be considered legally to be a party to said act of reformation, or, at any rate, that he would be bound by it by estoppel; but, as already stated, nothing in this record shows that he so knew or so understood, and his opportunities for knowing that this $55,000 Todd mortgage existed were just as good as Wall’s, and his opportunities for knowing the law governing the situation were just as good asi Wall’s, and Wall occupied no trust relation towards him, and hence Wall was under no obligation, moral or legal, to act otherwise than exactly as he did, namely, as president of the Bayou Sale Planting & Drainage Company, to cure the error that had been made in the original act of mortgage, in so far as it lay in the power of that company by its own act to do; and, as a .consequence, no ground of estoppel exists against him
Judgment affirmed.
O’NIELL, J., takes no part, having issued the writ of injunction as district judge.