*597
 
 ROGERS, Justice.
 

 Vivacqua Irmaos, S. A., a corporation domiciled and doing business in the City of Victoria, Republic of Brazil, brought this suit against William Hickerson, Jr., domiciled and doing business in the City of New Orleans under the name of Hickerson Importing Company, to recover the sum of $2,458, with interest and costs. The suit is based on a draft for $2,408 drawn by plaintiff, Vivacqua Irmaos, S. A., on the Interstate Trust & Banking Company of New Orleans, Louisiana, under an irrevocable power of attorney issued by the bank for account of defendant in favor of plaintiff. In addition to the amount of the draft, plaintiff claims the sum of $50, which plaintiff expended for protest fees, cables and telegrams. The draft sued on represents the purchase price of 250 bags of green coffee purchased from Vivacqua Irmaos, S. A., by the Hickerson Importing Company.
 

 The agreement to purchase the coffee is dated November 23, 1932, and is embodied in a printed form prepared by plaintiff with the special provisions as to price and amounts typed in. After the purchase-agreement was signed, George W. Lawrence & Co., Inc., plaintiff’s agent in New York, requested the Hickerson Importing Company to send it a letter of credit to be issued by the Interstate Trust & Banking Company of New Orleans. In compliance with this request, the Hickerson Importing Company obtained from the Interstate 'Bank and forwarded to Lawrence & Company, Inc., letter of credit No. 3204 in favor of the plaintiff company, for the sum of $2,408, the agreed purchase price of the coffee. The coffee was shipped in accordance with the terms of the contract and, simultaneously with the shipment, the plaintiff company drew a ninety-day sight draft for $2,408 on the Interstate Bank in accordance with the terms of the letter of credit issued by the bank. Attached to the draft by the drawer were the documents evidencing the shipment of the 250 bags of coffee, which were invoiced and consigned to the Interstate Bank at New Orleans. The draft was presented by the plaintiff company to the Interstate Bank and was accepted by the bank for payment ninety days later at the National City Bank in New York City. Upon the acceptance of the draft, the Interstate Bank detached the bill of láding and other shipping documents and surrendered them to the Hickerson Importing Company, which' executed a trust recfipt therefor. The Hickerson Importing Company then obtained possession of the coffee, sold it, and received the proceeds of the sale. After selling the coffee, the Hickerson Importing Company, in accordance with the custom prevailing among coffee importers, sent the Interstate Bank its check for an amount sufficient to pay plaintiff’s draft in full. This payment was made on January 30, 1933. On March, 2, 1933, the Interstate Bank failed to open its doors and thereafter operated, from time to time, on a restricted basis until January 4, 1934, when it was finally closed and placed in liquidation by the State Bank Commissioner. On April 10, 1933, the maturity date of the draft, plaintiff presented the draft for payment at the National City Bank in New York, but that bank
 
 *599
 
 refused payment, whereupon the draft was duly protested. The plaintiff then presented the draft to the Interstate Bank at its main office in New Orleans for payment, but the bank refused to pay more than five per cent of the amount of the draft, which was the percentage available at that time for the payment of the claims of all ordinary creditors of the bank.
 

 Defendant, by way of defense to plaintiff’s claim, alleged that he had duly paid for the coffee shipped by plaintiff; that such payment was made through the bank and according to the method designated by plaintiff and in the usual course of trade; that he had fully complied with all his obligations in connection with the purchase of the coffee both to plaintiff and to the Interstate Bank. As a further defense, defendant alleged that he advised plaintiff in June, 1933, how plaintiff could collect the amount of the draft of the Interstate Bank by attaching certain funds on deposit in New York to the credit of the Bank, but that plaintiff failed to avail itself of the information and its failure to collect the amount of the draft from the Interstate Bank was due to the neglect of plaintiff, which relieved defendant of any liability he might have had.
 

 The court below rendered judgment dismissing plaintiff’s suit and plaintiff has appealed.
 

 The sale of the coffee was made to the Hickerson Importing Company for account of Yivacqua Irmaos, S. A., through C. E. Bickford & Co., Inc., brokers of New Orleans, acting for J. W. Lawrence & Co., Inc., the New York agents of the vendor. The written contract evidencing the sale contains the following provisions with reference to the manner in which the coffee was to be paid for:
 

 “Reimbursement by ninety days’ sight drafts, under Letter of Credit, confirmed by first class Bank or Bankers, acceptable to sellers, payable in New York. Buyers to be responsible for prompt opening of Letter of Credit, for due acceptance of draft or drafts against such Credit and payment of the drafts at maturity. * * *
 

 “Reimbursement: Interstate Trust & Banking Co., New Orleans, La.”
 

 Plaintiff’s contention is that under the foregoing provisions of the contract, defendant was obligated not only to furnish a letter of credit to cover payment of the draft drawn by the plaintiff, but, in addition, defendant made himself responsible “for payment of the draft at maturity.” Plaintiff’s contention is, as we understand it, that defendant is not only primarily liable as the purchaser of the coffee, but also is secondarily liable for such payment as surety of the Interstate Bank.
 

 Plaintiff argues that the Interstate Bank was selected by defendant, not by plaintiff, and that the obligation of the bank to pay the draft was an obligation assumed by the bank under a contract entered into by defendant and the bank, to which contract plaintiff was not a party; that the sale of the coffee through the interposition of the bank, was an arrangement enabling defendant to obtain possession and to dispose of the coffee without paying therefor in
 
 *601
 
 advance; that this arrangement, although beneficial to the defendant, never absolved defendant from his obligation to the plaintiff for the purchase price. We do not think plaintiff’s argument wholly correct.
 

 The record shows that it was the plaintiff, through its New York agent, that required defendant to furnish plaintiff with the letter of credit on the Interstate Bank to cover the purchase price of the coffee. The contract between plaintiff and defendant is on a printed form prepared by plaintiff or its agent, with the exception of the special provision, reading: “Reimbursement: Interstate Trust & Banking Co., New Orleans, La.,” which was typed in the contract by plaintiff’s agent. This added clause clearly indicates that plaintiff expected reimbursement or payment for the coffee to be made by the letter of credit of the Interstate Bank, the financial standing. of which was satisfactory to plaintiff. From all of which it is clear that plaintiff was unwilling to sell the defendant any coffee on his own credit but was willing to sell defendant coffee against the credit of the Interstate Bank. Plaintiff required defendant to have the bank open credit in favor of plaintiff so that plaintiff would be assured of the acceptance of its drafts when presented for acceptance, with bills of lading attached, and be assured also of the payment of the draft by the Interstate Bank upon maturity. When the Interstate Bank opened the irrevocable letter of credit in defendant’s favor and accepted the ninety-day draft drawn thereon, the bank’s liability to the plaintiff became absolute. This is so irrespective of whether defendant had ever paid the Interstate Bank the amount of the draft. The coffee was invoiced and consigned to the Interstate Bank. The defendant never received any coffee from plaintiff. The only coffee he received was from the Interstate Bank in which the title to the coffee vested. Payment for the coffee was made by the defendant to the Interstate Bank in accordance with the obligations of the trust receipt and in accordance with the plain intention of the contract entered into between the plaintiff and the defendant.
 

 Plaintiff was not willing to sell its coffee on the basis of defendant’s financial standing which plaintiff apparently did not investigate, but plaintiff was willing to sell the coffee on the basis of the financial standing and reputation of the Interstate Bank, which, presumably, plaintiff had investigated. That bank was not selected by the defendant any more than it was selected by the plaintiff as the intermediary through which the transaction was to be handled. In fact, it was the plaintiff itself that named the particular bank, whose credit was satisfactory to it, and through which it desired to sell its coffee. The arrangement between plaintiff and defendant for the sale and purchase of the coffee was calculated to benefit the plaintiff as much as, if not more than, it was calculated to benefit the defendant. Since the plaintiff was not willing to sell its coffee solely on the credit of defendant, but only on the credit of the Interstate Bank, the argument that plaintiff required that defendant would in effect guarantee the solvency of the bank is not
 
 *603
 
 convincing, nor do we think that any such guaranty was within the contemplation of the contracting parties.
 

 The term “reimbursement” appears to have been used in the contract as an equivalent for the term “payment.” The words, “Reimbursement: Interstate Trust & Banking Co., New Orleans, La.,” typed in the contract by plaintiff’s agent, stipulated the method by which payment of the coffee was to be made, namely, by the Interstate Bank, through a letter of credit to be issued by the bank. Defendant discharged its contractual obligations by furnishing plaintiff the letter of credit issued in plaintiff’s favor by the. Interstate Bank, which was the specified manner of making reimbursement for the price of the coffee, and by paying the bank before maturity the amount of the draft drawn by plaintiff and accepted by the bank under the letter of credit.
 

 To hold defendant liable to plaintiff under these circumstances would force defendant to pay a second time for coffee which defendant has already paid for in accordance with the custom of trade and as contemplated by the parties under the terms of their contract.
 

 Plaintiff cites the case In re Canal Bank & Trust Co.’s Liquidation, Intervention of Wilcox Co., 178 La. 575, 152 So. 297, as controlling of the issues involved in this case. We do not think this is so. In the cited case, the controversy was not between Wilcox and the foreign exporter but between Wilcox and the liquidator of the bank. The suit was based on the demand of Wilcox for the return of his trust receipt, given the bank for the surrender of bills of lading held as collateral pledged to secure advances made to him. The demand of Wilcox arose under contracts made between Wilcox and the bank, to which contracts the foreign exporter was not a party. Under these contracts, Wilcox agreed to furnish the bank with sufficient funds to retire the draft drawn by the foreign exporter and accepted by the bank. The consideration for this engagement on the part of Wilcox was the reciprocal agreement on the part of the bank not only to accept the draft, but to pay it when it was presented. The bank only partially complied with its agreement. It accepted the draft but, because it was in liquidation at the time,, admitted its inability to pay the draft when presented. This court held that the bank having failed in its agreement, the obligation which Wilcox had assumed towards it had also ceased; that the bank being unable to comply with its agreement was in no position to demand that Wilcox comply with his. The Court approved the proposal of Wilcox to use the proceeds derived from the sale of the coffee in paying the draft, thereby relieving the bank of its obligation under its letter of credit and acceptance of the draft, and that upon such payment being made, the trust receipt be surrendered to him by the liquidator.
 

 For the reasons assigned, the judgment appealed from is affirmed.
 

 O’NIELL, C. J., absent.