## ORNSTEIN v. HICKERSON.

### No. 278.

District Court, E. D. Louisiana, New Orleans Division.

July 29, 1941.

Henican & Carriere and C. Ellis Henican, all of New Orleans, La., for plaintiff.

Racivitch & Hickerson and Robert L. Hickerson, all of New Orleans, La., for defendant.

CAILLOUET, District Judge.

This suit was originally brought on May 11, 1933, by Hugo Ornstein, lately operating and doing business as a coffee exporter under the name Ornstein & Company, out of Rio Janeiro, United States of Brazil, but he having died in the meanwhile and Dora Ornstein, wife of Adolf Gottlieb, having been judicially recognized as his "sole and universal heir", in keeping with the terms of his last will and testament, the proceedings have been carried through trial for and in her interest.

The defendant William H. Hickerson, Jr., domiciled and doing business in New Orleans, in this Eastern District of Louisiana, under the name of Hickerson Importing Company, is sued for $4,783, with legal interest thereon from judicial demand until paid, and costs, alleged to be due and owing under a written contract (there being no dispute between the parties as to its existence) signed L. C. Fallon & Co., agents of the seller, and accepted by Hickerson Importing Company as buyer, which read, in pertinent part, as follows:

"New Orleans, Nov. 17th, 1932.
"Sold for account of Messrs. Ornstein & Co., Rio de Janeiro

To Messrs. Hickerson Importing Co., New Orleans about Five hundred..........
(500) bags of Victoria..........Coffee shipped or to be shipped to New Orleans within a month..........(Name of vessel to be given as soon as known) * * *

Reimbursement by ninety-day sight drafts on New York under credit of Interstate Trust & Banking Co., New Orleans. L/C for about $4800.00 * * *."

The defendant first filed exceptions of no right or cause of action and of vagueness, which were overruled in due course.

In the answer which was subsequently filed, with reservation of the benefits of said exceptions, defendant first pleads that by the terms of the contract in question "* * * it was specifically stipulated that reimbursement (or payment) for said coffee to plaintiff was to be made by ninety-day sight drafts on New York under credit of Interstate Trust & Banking Company, which was fully complied with by defendant delivering to plaintiff letter of credit No. 3203 of said Bank in plaintiff's favor, under which plaintiff drew a draft on said Bank for the purchase price of said coffee, which draft was duly accepted upon presentation by the Interstate Trust & Banking Company, but defendant denies that this coffee was shipped to him, and denies that he received this coffee from plaintiff, all as is more fully set forth and explained hereinafter."

The answer thereafter continues to the effect that the said letter of credit, which was for $4,783.00 and dated December 14, 1932, was forwarded by defendant to plaintiff's agents "in full payment and settlement of its obligation to plaintiff under the contract to purchase"; that the coffee purchased was shipped and consigned to the order of the Interstate Trust & Banking Company, with original documents covering such shipment via S.S. Taubate, consisting of a commercial invoice, a consular invoice, and a complete set of clear negotiable "on board ocean bill of ladings", accompanying a 90-day sight draft for $4,783 for the price, duly forwarded to and received by said bank, which, so the pleader contends "was irrevocably obligated to pay the purchase price thereof as the debtor of plaintiff, and as the holder of said negotiable documents representing the ownership of said coffee"; that such draft was to be charged against the irrevocable credit established to plaintiff's account "as evidenced by the said letter of credit No. 3203"; that the coffee in question was so received by the Interstate Trust & Banking Company only in view of the bank's acceptance of the ninety-day sight draft for payment on April 7, 1933, at the National City

Bank of New York; that said coffee was thereupon delivered to defendant by the bank, under the terms and conditions of a trust receipt, a copy whereof defendant attaches to and makes part of the answer; and that said coffee was sold in due course by defendant and out of the proceeds of sale the bank was, on February 2, 1933, fully paid defendant's obligation unto it "for said letter of credit", so issued to Ornstein & Company, as evidenced by defendant's cancelled check which is also attached to and made part of such answer.

On April 7, 1933, when the Interstate Trust & Banking Company was then functioning only on a restricted basis (as it was, until finally closed and placed in liquidation by the Louisiana State Bank Commissioner) the ninety-day sight draft for $4,783 that the bank had accepted for payment on that date, at the National City Bank of New York, and that Ornstein & Company had disposed of through its regular banking channels in Brazil, was duly presented for payment in New York, but payment was refused and protest followed. The dishonored draft was then presented for payment to the acceptor bank at its main office in New Orleans, with demand made for full payment of the instrument, with no better success.

The evidence is quite clear that the plaintiff had sold coffee to Hickerson Importing Company, through L. C. Fallon & Company, brokers, on other occasions. The first one of such sales was on May 19, 1932, and the sale of November 17, 1933, now in issue, was the twelfth one. Every one of such purchases involved the use of Interstate Trust & Banking Company letters of credit. During the bank holiday which followed the making of the contract of November 17, 1932, Hickerson Importing Company bought coffee from Ornstein & Company, through the same brokers, at least once more but then there was, naturally, no longer question of a bank letter of credit because of the times, and the seller drew a sight draft on the buyer for the sale price.

Mr. Paul O. Fallon, who according to his testimony, is sole active operator of the business of L. C. Fallon & Company, testified that he personally attended to the sale of the 500 bags of coffee to Hickerson Importing Company on November 17, 1932, and that he forthwith cabled his principal upon the signing of the contract.

Neither he nor Ornstein & Company, he says, designated the Interstate Trust & Banking Company as the bank for the furnishing of the required letter of credit, but he did ask the buyer what bank would furnish such letter of credit and apparently both he and Ornstein & Company were entirely satisfied to have it be the Interstate Trust and Banking Company, which, according to Fallon, had issued each one of the previous eleven letters of credit connected with the other purchases of coffee made of Ornstein & Company by said Hickerson Importing Company, as aforesaid; and upon and against which bank, ninety-day sight drafts had been drawn with the result that they had all been accepted and subsequently paid in due course.

Furthermore Mr. Fallon testified that the right was reserved to the seller to disapprove of the bank, and it is reasonable to suppose that the coffee in question would not have been sold or shipped but for the fact that the method and manner of reimbursement or payment made use of was entirely satisfactory to and approved by both Ornstein & Company and its agent effecting the sale.

By the cablegram to Ornstein & Company, the brokers notified their principal as follows: "Draw at ninety days on Interstate Trust & Savings Bank, send all documents to Interstate, and to their order".

It may be here noted that the bank so referred to in the cablegram was the same as the Interstate Trust & Banking Company mentioned in the contract of sale; the "Savings" in the bank title, having been changed to "Banking".

Whilst the coffee was sold to be shipped to New Orleans "within a month" from November 17, 1932, and whilst shipment did take place on December 11th from Victoria, Brazil, the required letter of credit was not issued by the Interstate Trust & Banking Company until December 14th, when the L. C. 3203 for $4,783, addressed to Ornstein & Company, was furnished to L. C. Fallon & Company by Hickerson Importing Company.

This instrument read in part as follows:

"We hereby establish our irrevocable letter of credit in your favor for the account of Hickerson Importing Co., New Orleans, La., for any sum or sums not exceeding a total of Four Thousand Seven Hundred Eighty Three and 00/100 Dollars available by your drafts on Interstate Trust & Banking Co. at ninety days sight to be accompanied by the following documents:

"Commercial Invoice

"Consular Invoice

"Complete set of clean negotiable on board ocean bills of lading
all evidencing shipment of 500 bags of coffee from Victoria, Brazil to New Orleans, La.: * * *

"Bills of lading for such shipments must be made to the order of Interstate Trust & Banking Company, New Orleans, La.
*    *    *    *    *    *

"We hereby engage with the bonafide holders, endorsers, and drawers of such drafts drawn under and in compliance with the terms of this credit, that same will meet with due honor on presentation and delivery of documents as specified at Interstate Trust & Banking Co., New Orleans, La., and will be paid at National City Bank of New York, New York, N. Y., if negotiated or presented on or before December 17th, 1932.

"Drafts drawn hereunder must bear upon their face the clause: 'Drawn under Interstate Trust & Banking Company, Letter of Credit 3203, dated December 14, 1932'."

On the same day that such letter of credit was so issued, i. e., December 14, 1932, Ornstein & Company drew a ninety-day sight draft on Interstate Trust & Banking Company, New Orleans, for $4,783 "which place to account of HIC/N—500 bags of coffee shipped * * * against £——— Credit No. ——— dated ———, Interstate Trust & Banking Co., New Orleans, payable New York." This draft the drawee bank accepted on January 7, 1933, as payable at the National City Bank in New York on April 7, 1933. On the latter date, the draft was presented for payment in accordance with the acceptance, but to this day remains unpaid.

Such acceptance took place either after the receipt of the coffee shipment, since on January 3, 1933, or 4 days prior to said acceptance, Hickerson Importing Company made written application to the Interstate Trust & Banking Company for leave to withdraw, on the terms and conditions of a thereto subjoined trust receipt, certain documents thereinafter described as the consular invoice and bill of lading covering the 500 bags of coffee purchased from Ornstein & Co. (and which had come at-

tached to the ninety-day sight draft for $4,783 upon its presentation for acceptance) for delivery of said coffee "against sales"; or, in anticipation of the expected early arrival of the coffee shipment.

The coffee, so withdrawn from the bank's possession under such trust receipt arrangement, was marketed in due course by the defendant Hickerson Importing Company, which on February 2, 1933 (much in advance of the date on which the bank stood unconditionally bound to pay the accepted ninety-day sight draft drawn on it by Ornstein & Company) did remit and pay from out of the proceeds of such marketing, unto said Interstate Trust & Banking Company the sum of $4,804.85, being the full amount of the draft, plus the usual banker's commission, but less a 63-days' rebate at ½% on the amount of the letter of credit, inasmuch as the bank was then being placed in possession of the funds necessary to protect it against its acceptance and its obligation to pay the $4,783 on April 7, 1933.

The contract of sale undoubtedly provided that the purchased coffee was to be paid for by a ninety-day sight draft on New York under the credit of the Interstate Trust & Banking Company of New Orleans, from which a letter of credit "for about $4800.00" was to be obtained and furnished the seller.

■■ When the special irrevocable letter of credit in the defendant's favor was issued by the bank on December 14, 1932, and it thereafter accepted the Ornstein & Company ninety-day sight draft for $4,783 drawn on the same date, to cover the sale price of the coffee at issue, the bank's liability to the plaintiff became absolute; and the defendant Hickerson because of his having duly caused the issuance of the required letter of credit and the acceptance of the ninety-day sight draft drawn under the credit of the Interstate Trust & Banking Company, as was agreed upon as the medium of reimbursement or payment to the seller for the coffee shipped to the said bank, can not be justly held to again make payment for said coffee. His each and every obligation under the sales contract which was prepared, and presented to him for execution, by plaintiff's authorized agent has been discharged.

The case of Vivacqua Irmaos, S. A. v. Hickerson, 193 La. 495, 190 So. 657, which was decided in 1939, was one wherein the defendant here was also defendant. It arose out of a similar coffee sale, with like

irrevocable letter of credit issued by the Interstate Trust & Banking Company, a like ninety-day sight draft drawn by the seller upon said bank and due acceptance thereof, a like trust receipt withdrawal and a like marketing of the coffee by the defendant, with the bank paid the proceeds of sale up to the amount required to protect it against its absolute liability to the coffee seller, by reason of its acceptance of the sight draft.

It is contended by the plaintiff herein that there is a distinction to be drawn between that case and the present one, because (so it insists) in the former case it was the seller that required the letter of credit to be issued by the Interstate Trust & Banking Company, whilst here, it was the buyer.

But neither buyer Hickerson nor seller Ornstein & Company "required" anything other than as reflected by the written contract. The minds of the contracting parties met as to the method of payment and the contract provision that reimbursement was to be by a ninety-day sight draft drawn by the seller under credit of Interstate Bank & Trust Company, which bank the buyer was to cause to issue a letter of credit "for about $4800.00", was a contract provision that was mutually agreed upon.

The credit of the Interstate Trust & Banking Company, as in the Vivacqua case, was satisfactory to Ornstein & Company, and it was on the basis of the bank's assumed financial standing—conceivably superior to that of the defendant in the eyes of the South American exporter because it was a bank and one through which the seller had already satisfactorily concluded no less than eleven similarly-conducted coffee sales to said defendant—that the sale of the 500 bags of coffee was effected.

"Reimbursement", as held the Supreme Court in said Vivacqua case, means "payment", and Ornstein & Company contracted with defendant Hickerson to pay for the coffee sold him by his causing the Interstate Trust & Banking Company to accept the seller's ninety-day sight draft under its own credit and to issue the required letter of credit.

If the defendant in that case discharged his contractual obligation by (1) furnishing the seller with the letter of credit there in question, (2) by causing the acceptance by said seller's sight draft drawn upon it, and (3) by paying the bank, before maturity, the required amount to cover said ac-

ceptance, then in this present case, the same defendant has done as much.

The Supreme Court held in the Vivacqua case that he should not be held to pay a second time for his coffee purchase. Neither should he be here condemned to so do.

### Findings of Fact.

1. Ornstein & Company and its agent, L. C. Fallon & Company, at the time of the confection of the sales contract of November 17, 1932, intended that the coffee purchased by Hickerson Importing Company should be paid by the Interstate Trust & Banking Company in ninety days from its acceptance of the seller's sight draft upon it in the sum of $4,783, under the required letter of credit which both knew was to be issued with their entire approval and as required by the said sales contract by no other bank than the Interstate Trust & Banking Company.

2. This course was the established and approved method of transacting coffee sales by Ornstein & Company (acting through L. C. Fallon & Company, its agents) to Hickerson Importing Company.

3. No less than eleven (11) such coffee sales, under similar conditions, had taken place between the parties from May 19, 1932, up to the date of the sales contract now in issue, i. e., the one of November 17, 1932.

4. Apparently understanding from advices received by it from its duly authorized agents, L. C. Fallon & Company, that said transaction was under the credit of the Interstate Trust & Banking Company, the seller Ornstein & Company actually shipped the coffee on December 11, 1932 (before the issuance on December 14, 1932, of the bank's letter of credit), consigning such coffee to the bank; and three days thereafter, it drew upon the bank for the sales price of the coffee.

5. The defendant duly paid to said Interstate Trust & Banking Company on February 2, 1933, the full amount of the sodrawn ninety-day sight draft of $4,783, which said Interstate Trust & Banking Company had accepted on January 7, 1933, for payment to be made on April 7, 1933.

### Conclusions of Law.

1. The defendant, William H. Hickerson, Jr., doing business under the trade name of Hickerson Importing Company, has discharged his each and every obligation under the sales contract of November 17, 1932.

2. The plaintiff's suit should therefore be dismissed, with costs.

Let judgment be accordingly entered.