HOOD, Judge.
Plaintiff, United States Rubber Company, instituted this suit against Coco & Fuglaar, Inc., Richard Coco and Mary Ball, seeking a judgment against all of said defendants, in solido, for the principal sum of $14,428.73. Alternatively, plaintiff prays for judgment against Mary Ball decreeing the sale of a business from Coco & Fuglaar, Inc., to the said Miss Ball to be null and void, and decreeing the latter to be liable to plaintiff *204 under the Louisiana Bulk Sales Law (LSA-R.S. 9:2961 et seq.). Judgment was rendered by default against the first two named defendants for the amount claimed under the principal demand. The remaining defendant, Mary Ball, filed an answer, and after trial on the merits, judgment was rendered by the trial court in favor of plaintiff and against that defendant, decreeing the sale of the business to be null and void insofar as it affects the rights of plaintiff herein, and condemning the said Miss Ball to pay to plaintiff the principal sum of $7,468.20. The defendant, Mary Ball, has appealed from this last-mentioned judgment.
The evidence shows that by act of sale dated January 4, 1961, Miss Ball purchased from Coco & Fuglaar, Inc., substantially all of the tire business formerly operated by the vendor at 98 Bolton Avenue in Alexandria. The sale purports to convey to the purchaser certain furniture and fixtures, equipment, trucks, stock of merchandise, accounts receivable and other assets. As consideration for the property and rights so conveyed Miss Ball paid the sum of $1,173.92, in cash, and she assumed and obligated herself to pay a number of liabilities of the vendor. The assumed debts which were specifically listed in the act of sale amounted to the aggregate sum of more than $20,000.00. In completing this sale the parties did not comply with the provisions of the Louisiana Bulk Sales Law.
Miss Ball had been employed by Coco & Fuglaar, Inc., as bookkeeper and as manager of its tire business for more than two years prior to the sale, and she was thoroughly familiar with all of the assets and liabilities of the company at the time she purchased the business. She also owned the building in which the tire business was then being conducted, which building had been leased by her to Coco & Fuglaar, Inc., for some time prior to the sale. Immediately after the sale was completed, she took over the business, as owner, and continued to operate it in the same location without any interruption of such business.
In August, 1959, or more than a year before this transaction took place, plaintiff began doing business with Coco & Fuglaar, Inc., by selling it merchandise on consignment, and it continued to do so until October 12, 1960, at which time the consignment agreement was terminated and all merchandise belonging to plaintiff was repossessed. The account due- plaintiff by Coco & Fug-laar, Inc., had been delinquent for several months prior to the cancellation of the consignment agreement, and representatives of plaintiff had contacted officers and the manager of the debtor corporation on several occasions in an effort to obtain payment of the amounts due.
On December 13, 1960, William P. Alth-ans, the District Credit Manager of plaintiff company, went to Alexandria and met with Richard Coco and Jesse Coco, President and Secretary-Treasurer, respectively, of Coco & Fuglaar, Inc., and with Miss Ball; the purpose of such meeting being to discuss this delinquent account. At this meeting, which lasted almost all day, it was determined that the balance then due on that account amounted to $14,428.73. A schedule of payments was agreed upon, and as evidence of the indebtedness six promissory notes amounting to the aggregate sum of $14,428.73 were executed by Coco & Fug-laar, Inc., made payable to the order of plaintiff, all of which notes were endorsed personally by Richard Coco, President of the corporation. These notes were delivered to plaintiff, and as security for the payment of this indebtedness two accounts receivable due Coco & Fuglaar, Inc., were assigned to plaintiff. One of these accounts, amounting to $15,430.95, was due by Coco Brothers, and the other was due by Richard Coco, personally, in the amount of $4,726.25.
No payments have been made on the notes or on the two accounts which were assigned to plaintiff, and by this suit plaintiff is seeking to recover the amount alleged to be due on the indebtedness represented by the above-described promissory notes.
Plaintiff contends primarily that Miss Ball is indebted to it for the full amount *205 claimed because she expressly assumed and agreed to pay all of the liabilities of Coco & Fuglaar, Inc., including the amount due plaintiff in this suit. In the alternative, plaintiff contends that since there has been no compliance with the Louisiana Bulk Sales Law, the sale is null and void as to plaintiff, and that it is entitled to recover from the purchaser, Miss Ball, the amount claimed up to the fair value of all goods and effects transferred to her.
Defendant, Mary Ball, denies that she agreed to pay any part of the account due plaintiff by Coco & Fuglaar, Inc. On the contrary, she contends that prior to the sale plaintiff made other arrangements for the payment of that account, and that plaintiff expressly agreed with her that upon her purchase of the business she would not be liable to plaintiff for any part of the indebtedness due it by Coco & Fuglaar, Inc. As alternative defenses, Miss Ball pleads estoppel against or laches on the part of plaintiff.
We find no evidence tending to establish plaintiff’s primary contention that Miss Ball expressly agreed to pay the account upon which this suit is based. Accordingly, we think the trial court correctly held that there was no such agreement.
The next question presented is whether plaintiff expressly agreed with Miss Ball that upon her purchase of the tire business she would not be obligated to pay the account due plaintiff by her vendor, Coco & Fuglaar, Inc.
Miss Ball testified that early in November, 1960, she agreed with Richard Coco that she would purchase the business if she could do so without assuming the indebtedness due by Coco & Fuglaar, Inc., to plaintiff. She stated that on two occasions, November 12 and December 3, 1960, she informed Mr. Althans that she desired to purchase the tire business, but did not want to assume the indebtedness due plaintiff, and she urged Mr. Althans to “settle the account.” According to her testimony, Mr. Althans came to Alexandria on December 13, 1960, for the purpose of settling the account, and thus enabling her to purchase the business without having to assume that indebtedness. It was Miss Ball’s understanding from the discussions held on that date that plaintiff accepted the notes and the assignment of two accounts as a settlement of the open account, and that plaintiff thereupon agreed that Miss Ball could then buy the tire business from Coco & Fuglaar, Inc., without being liable for the latter’s indebtedness to plaintiff.
Mr. Althans denies that Miss Ball informed him prior to December 13, 1960, of her plan to purchase the business, and he testified that on December 13, 1960, there was no agreement, express or implied, to the effect that she could purchase the tire business without assuming or obligating herself to pay the account due plaintiff. He conceded that on the last-mentioned date Miss Ball mentioned to him, “ * * * that she was thinking of possibly purchasing that business if she could come to some arrangements with Mr. Richard Coco.” He testified however, that this statement was made by defendant Ball at the conclusion of the conference, after the settlement of this account had been arranged, and that he then advised Miss Ball that if she did purchase the business, that “she should comply with the bulk sales statute of Louisiana.”
The testimony of four other witnesses, including Richard and Jesse Coco, tend to support Miss Ball’s version of what transpired on that occasion, while the testimony of E. H. Harry, Jr., Assistant District Credit Manager of plaintiff company, and the written documents which were filed in evidence, tend to support the version given by Mr. Althans.
With reference to some of the documentary evidence in the record, we note that the six promissory notes which form the basis for this suit were all executed by Coco & Fuglaar, Inc., the owner and operator of the tire business which was later sold by it to defendant Ball. There is no question, therefore, but that these notes evidence an *206 obligation of the vendor corporation, which obligation was incurred for tires and merchandise purchased by said vendor from plaintiff in connection with the same tire business. The debt evidenced by these notes, therefore, was a debt. owed by the vendor, Coco & Fuglaar, Inc., at the time the sale was made.
Also, the document executed by Coco & Fuglaar, Inc., on December 13, 1960, formally assigning two accounts to plaintiff as security for the payment of the notes, specifically recites that this assignment was made “in furtherance of the terms of” the consignment agreement which previously had been entered into between plaintiff and said corporation. It seems to us that such a stipulation would not have been included in the assignment if the parties actually had intended, as urged by defendant, that the notes and this assignment were to be accepted by plaintiff as a settlement of the account owed by the tire business, and that said business was no longer to be indebted to plaintiff.
The trial judge in his excellent reasons-for judgment carefully reviewed all of the evidence, including the testimony of each witness, and after doing so he concluded that the evidence failed to establish an agreement between plaintiff and defendant Ball to the effect that the latter would be relieved of any obligation to said plaintiff in the event she purchased the tire business from Coco & Fuglaar, Inc., without complying with the Louisiana Bulk Sales Law. We think the evidence amply supports that conclusion.
Defendant Ball contends alternatively that plaintiff is estopped from taking advantage of her failure to comply with the Bulk Sales Law. The basis for this plea of estoppel is: (1) that Mr. Althans led her to believe that she would not be obligated to plaintiff if she purchased the tire business; (2) that plaintiff’s agents unsuccessfully tried to persuade defendant to continue to handle plaintiff’s tires after the sale had been completed; (3) that after the sale plaintiff accepted a payment of $41.60 from defendant for a sign which admittedly belonged to plaintiff; and (4) that plaintiff made no demand on defendant for payment of the notes until September 2, 1961, although the -first note became due more than six months prior to that date.
As correctly pointed out by counsel for defendant, where a person, with knowledge of the facts, acts or conducts himself in a particular manner, he cannot afterward assume a position inconsistent with such act, to the prejudice of another who has acted in reliance on such conduct or representation. Phillips v. Mid-Continent Life Insurance Company, La.App. 2 Cir., 130 So.2d 791 (Cert. denied). In the instant suit we have found that plaintiff’s agent did not lead Miss Ball to believe that she would be relieved of any indebtedness to plaintiff if she purchased the tire business from Coco & Fuglaar, Inc. Defendant Ball, therefore, did not rely on any such representation in purchasing the business. All of the other acts pointed out by defendant as bases for the plea of estoppel occurred after the sale had been completed, so obviously there could have been no reliance by defendant on any of those acts in purchasing the business. We agree with the trial judge that there is no merit to defendant’s plea of estoppel.
Finally, in the alternative, defendant pleads “laches” on the part of plaintiff in failing to assert a claim against her until more than six months after the first note became due. There is nothing in the record which tends to show that the delay in asserting this claim against defendant was unreasonable or inexcusable, or that defendant was prejudiced in any way because of such delay. Accordingly, we conclude, as did the trial judge, that there is no merit to the plea of laches. See Johnson v. Mansfield Hardware Lumber Company, D.C., 159 F.Supp. 104 (affirmed 5 Cir., 263 F.2d 748); Succession of Picard, 238 La. 455, 115 So.2d 817.
*207 The trial court found that the assets of the business purchased by Miss Ball had a fair value of $23,936.54, and that the total liabilities of the vendor, including the debts which were not expressly assumed by the purchaser, were $46,195.12. The indebtedness of Coco & Fuglaar, Inc., to plaintiff represented 31.2 per cent of the total debts owed. The trial judge held, therefore, that plaintiff was entitled to recover from Miss Ball 31.2 per cent of the fair value of the assets acquired by her, or the sum of $7,468.20. We think his calculations were correct, and that judgment was properly rendered in favor of plaintiff and against Miss Ball for that amount.
For the reasons herein assigned, the judgment appealed from is affirmed. All costs of this appeal are assessed to defendant-appellant.
Affirmed.