BOLIN, Judge.
Fidelity Credit Co., Inc., instituted action against W. C. Winkle and Winkle Furniture and Appliance Company seeking recovery on certain promissory notes and recognition of plaintiff’s mortgage on all the stock of merchandise and the fixtures located in defendant’s store in Min-den, Louisiana. The petition likewise asked that a Writ of Sequestration, previously granted, be maintained.
Intervening in the suit were Philco Finance Corporation and Arkansas Radio *717 & Appliance Company of Little Rock asserting several causes of action against Fidelity. Meanwhile, the Winkle Company was placed in involuntary bankruptcy and is no longer before the court.
At the trial of the cause interveners limited their action to a claim against Fidelity, as receiver, under the Bulk Sales Law, Louisiana Revised Statute 9:2961 et seq., for taking a chattel mortgage dated September 28, 1960, covering Winkle’s entire stock of merchandise without having in any respect complied with the requirements of the statute. Subsequent chattel mortgages were executed by Winkle to Fidelity but these are not under attack. The lower court, without assigning written reasons, found for defendant in intervention, Fidelity Credit Co., Inc.
Prior to trial a rather extensive stipulation of facts was entered into between Fidelity and interveners, referred to as Philco. Only so many of the circumstances surrounding the transactions of the various parties as are necessary for a determination of the issue of liability of Fidelity to in-terveners will be recited.
On, and sometime prior to, September 28, 1960 (the date of the mortgage in question) W. C. Winkle was engaged in the business of selling furniture and appliances at retail in Springhill and Minden and was operating the business as Winkle Furniture and Appliance Company. Certain appliances including television sets, washing machines, refrigerators and freezers were purchased from Philco on credit and paid for only after each such appliance was sold by Winkle to his customers. On each appliance Philco retained a vendor’s lien and privilege securing the unpaid balance of the purchase price.
Prior to the execution of the first chattel mortgage by Winkle he had entered into a "dealer agreement” with Fidelity to sell to the latter customer contracts consummated at the time he made credit sales in order to finance such sales.
Under the “dealer agreement” when Winkle sold an appliance or article of furniture on credit, the retail customer would execute a promissory note for the unpaid portion of the purchase price, secured by a chattel mortgage covering the merchandise. The note was then transferred by Winkle to Fidelity for its face value less a discount. In the event the retail customer defaulted on his note payments, Winkle agreed to reimburse Fidelity for the unpaid balance on the defaulted note. During the summer of 1960 a large number of the notes so transferred were in default and Winkle was unable to repay Fidelity the unpaid balance due. To secure this current indebtedness in the amount of approximately $17,000 and a limited future indebtedness Winkle executed the chattel mortgage dated September 28, 1960, naming Fidelity Credit Company, Inc., as mortgagee, and covering:
“ * * * all of Mortgagor’s stock of merchandise composed of Liquified Petroleum gas ranges, refrigerators, water heaters, storage containers, space heaters, furnaces and other equipment, parts and appliances now located at the place or places of business of the Mortgagor as herein set forth or in any other place of business or storage maintained or used by Mortgagor in said county or within said State to include all of Mortgagor’s stock of such merchandise complete with all present and future attachments, accessories, replacements and additions. * $ * »
The sum of the respective unpaid balances due Philco as of September 28, 1960, was in the total amount of $18,735.70; and the fair market wholesale value of each appliance was on that date no less than the amount due and unpaid on its purchase price by Winkle to Philco. No payments have been made to Philco since September 28, 1960, by Winkle, Winkle, Inc., or any other party except the sum of $3,400 received by Philco by virtue of the bankruptcy sale.
*718 Also stipulated was the fact that on January 24, 1961, pursuant to the writ of sequestration issued herein on the petition of Fidelity, the Sheriff of Webster Parish seized the stock of merchandise situated in the Winkle, Inc., stores in Minden, which merchandise included many of the Philco appliances, the fair market wholesale value of which as of the date of seizure was $9,965. The total amount due and owing on the respective purchase prices of said appliances was no less than $9,965.
At the trial of this matter, and on appeal, Philco is pursuing only its claim against Fidelity as receiver for Philco’s proportionate share of the fair value of the property covered by the first bulk chattel mortgage dated September 28, 1960, admittedly given by Winkle to Fidelity, in violation of Louisiana’s Bulk Sales Act, and which is conceded by Fidelity to be void. It is stipulated that on the aforesaid date Winkle’s stock of merchandise had a total fair market value of $56,143.09 and his liabilities totaled $105,839.78 which included a total indebtedness to Philco of $28,425.94.
Since it is conceded the mortgage under attack is patently void as to the creditors of the transferor, having been executed in violation of Louisiana Revised Statute 9:2961, the court is presented only with the question of the effect of noncompliance with the Bulk Sales Act by Fidelity and the latter’s liability, if any, to Philco under Louisiana Revised Statute 9:2963 which provides in pertinent part as follows:
“Any person to whom any of the property mentioned in R. S. 9:2961 [any portion or the whole of a stock of merchandise, etc.] shall be so transferred, who shall pay any part of the consideration therefor to such transferor, or who shall execute or deliver to the transferor or to his order, or to any person for his use, any promissory note or other evidence of indebtedness for the transfer or any part thereof without first having demanded and received from the transferor or from his agent the statement provided for in R. S. 9:2962 B. verified as therein provided, and without paying or seeing to it that the purchase money or other consideration of the transfer is applied to the payment of the bona fide claims of the creditors of the transferor pro rata according to the dignity of their several claims as shown upon the verified statement, and without first having sent the notices of said transfer and such state-, ment of creditors as provided for in R. S. 9:2962 C., shall at the suit of any creditor, be held liable to all the creditors of the transferor as receiver for the fair value of all the property so transferred to him. * * * ” (Emphasis supplied.)
By definition in Section 2965 of the act “transfers” under this part include mortgages as well as transfers in payment of debt, in whole or in part, pledges, sales, exchanges and assignments, whether for cash or on credit. Thus it is clear the mortgage was prohibited and void as to Winkle’s creditors. As an additional safeguard, the legislature has provided the transferee shall be held liable to all the creditors of transferor as receiver for the fair value of all the property so transferred to him.
Appellant argues that on September 28, 1960, all the stock of merchandise in Winkle’s store was “transferred” to Fidelity by the chattel mortgage and it became liable to all the creditors for the fair value of the property as inventoried at that time, i. e., $56,143.09. It is undisputed that Fidelity did not take possession of the mortgaged chattels on the date in question or at any time thereafter. Appellant nevertheless contends that the act defines a mortgage as a transfer and that it should be so interpreted throughout the entire act.
In support of his contentions appellant cites the early case of Devoé and Raynolds Co., Inc., v. Jones’ Pharmacy (La.App. 2 Cir., 1926) 5 La.Ct. of App.Rep. 149 and quotes an excerpt from the opinion purporting to set forth the purpose of the legis *719 lature in passing Act 114 of 1912 wherein the receivership provision was introduced by amendment. However the holding of the Devoé case precedes the general statement regarding the purpose of the Bulk Sales Act and it was held:
“The ‘bulk purchase’ law (Act 114 of 1912) does not bind a purchaser in violation of that act in solido with the seller for the latter’s debts to the value of the goods sold, but only binds him as receiver of the goods that came into his possession by such for the benefit of the creditors of the seller.” (Emphasis supplied.)
Thus it is apparent the physical reception of the goods was thought to be a necessary prerequisite to holding the purchaser liable as receiver. We can find no statement in any of the cases cited by appellant which would lead to a contrary conclusion. While it is true the act defines a “mortgage” as a “transfer” within the prohibition'of the act, we believe the revocatory action is the available remedy remaining to a creditor unless he can show the goods “transferred” in violation of the act, or their proceeds, actually came into the possession of the transferee, whether by sale, mortgage or otherwise.
In our examination of the remaining cases cited by appellant we find none upon which to base a holding that a mortgagee who takes a chattel mortgage upon the entire stock and fixtures of a business but who never takes possession of such property nor obtains the proceeds of a sale of the property can be held liable as a receiver to the creditors of the transferor. On the contrary, in the case of United States Rubber Co. v. Ball (La.App. 3 Cir., 1963) 153 So.2d 203, cert. denied 244 La. 1013, 156 So.2d 223, the defendant actually purchased the assets of the debtor, took possession and continued to run the business at the same location, without interruption of such business. The trial court found that the assets of the business purchased had a fair value of $23,936.54 and that the debt upon which plaintiff sued represented 31.2 per cent of the fair value of the total debts owed and allowed plaintiff to recover the said percentage of the assets acquired from their debtor.
Appellee argues the penalty provisions of R. S. 9:2963, making the transferee receiver, comes into effect only with regard to property actually received by the transferee in the transfer. In support of this contention he cites three Louisiana cases, the principal one being Manchester Silver Co. v. Clara Jewelry Co. (1 Cir., 1931) 19 La.App. 367, 138 So. 467 in which we find the following pertinent language relative to bulk sales made in violation of the Act:
“The liability of the transferee in a sale of merchandise in bulk, is fixed by section 3, and nowhere in the act do we find that he is made a joint or solidary obligor with his vendor in favor of the latter’s creditors. Neither has he any contractual relation with these creditors under which he can be held responsible in a personal judgment in favor of any of them. The language of section 3 of the act is unequivocal, and makes him liable ‘at the suit of any creditor * * * to all the creditors of the said transferor as receiver for the fair value of all the property so transferred to him.’ The remedy which his transferor’s creditor has against him, therefore, is, not to endeavor to obtain a personal judgment against him for the amount of his indebtedness, as has been done by the plaintiff creditor in this case, but to have him cited into court as one who has received goods out of the usual course of business, and have him account for the fair value of same, subject, of course, to any defense that he may validly urge. This same question was passed on by this court in the case of General Tire & Rubber Co. v. Bullock et al., 14 La.App. 522, 130 So. 136, and we find no reason to change our views and the decision of that case.” (Emphasis supplied.)
*720 We conclude that, in spite of the definition assigned to the word “mortgage” in R. S. 9:2965 as being a transfer, enforcement of the provision making the transferee receiver necessarily contemplates that the transferee (mortgagee) shall have received the property.
For the reasons assigned the judgment of the lower court is affirmed at appellant’s cost.
Affirmed.