389 So.2d 731 (1980)
Jack SCHWEIBISH d/b/a Metal Services of Colorado
v.
PONTCHARTRAIN STATE BANK.
No. 11148.
Court of Appeal of Louisiana, Fourth Circuit.
September 9, 1980.
Rehearing Denied November 17, 1980.
*733 Paula A. Peronne, New Orleans, for Jack Schweibish, d/b/a Metal Services of Colorado, plaintiff-appellee.
Newman & Drolla, Robert A. Mathis, New Orleans, for Pontchartrain State Bank, defendant-appellant.
Before SAMUEL, BOUTALL and BARRY, JJ.
SAMUEL, Judge.
Plaintiff, Jack Schweibish, d/b/a Metal Services of Colorado, filed this suit against the Pontchartrain State Bank to recover the sum of $12,285.30, which he claims the bank owes him under an irrevocable letter of credit dated July 2, 1976.
The defendant answered, denying it had issued the letter of credit. In the alternative, it alleged plaintiff failed to comply with the terms of the claimed letter of credit by not furnishing the documentary evidence called for by those terms. Defendant further asserted the documents called for by the credit were not timely received by it, and that the credit was cancelled.[1]
After a trial on the merits, there was judgment in favor of plaintiff in the amount prayed, together with interest and costs. Defendant has appealed.
The document sued upon was printed on defendant's form. It is styled "Irrevocable Credit No. 000139-76", dated July 2, 1976, and is addressed to United Bank of Denver National Association. It authorizes that bank to draw on it for the account of International Metals Corporation up to the amount of $12,500 available by sight draft for 100% "Invoice Cost" to be accompanied by the following documents:
"Your invoice to Internation [sic] Metals covering 40,000 lbs. of aluminum scrap 6061-6063.
Certified Scale Weight slip showing net amount of Aluminum shipped.
Signed Bill's [sic] of lading in duplicate.
You may draw against this credit at 35 cents per pound shown at net weight of Aluminum scrap."
The letter of credit further provides bills of lading must be dated not later than July 12, 1976, and drafts drawn against the credit shall be honored on delivery of the specified documents if negotiated or presented at the bank on or before July 12, 1976. It further provides it is subject to the Uniform Customs and Practice for Documentary Credits (1962 Revision) in accordance with brochure No. 222 of the International Chamber of Commerce.
The credit was issued to plaintiff at the request of an organization named International Metals Corporation. Plaintiff sold aluminum to International Metals between February and July, 1976. Defendant bank did not receive any remuneration from International Metals for the issuance of the credit.
Plaintiff agreed to sell International Metals approximately 30,000 pounds of aluminum scrap. The aluminum was sold to plaintiff by Accurate Perforating Company, Inc., of Chicago, and it was delivered to International Metals in Chicago on July 8, 1976 through an entity known as Croft Metals of McComb, Mississippi. Plaintiff's price to International Metals was $12,285.30. The parties do not dispute aluminum *734 was delivered to Croft Metals as nominee of International Metals and that plaintiff complied with his contract.[2]
On two or three prior occasions plaintiff undertook metal transactions with International Metals, and he received payment from defendant under similar letters of credit. However, defendant did not pay plaintiff under its letter of credit in suit.
Plaintiff testified he contacted a defendant employee when he realized he had not been paid. The bank employee insisted the bank had not received the documentation required by the credit, and further generally refused to discuss the transaction with him.
Defendant contends it is not liable to plaintiff because he did not comply with the requirements of the credit prior to its stated deadline of July 12, 1976 and because the documentation furnished by him did not precisely conform with the conditions stated in the credit. Defendant relies most heavily on plaintiff's failure to issue a sight draft. Plaintiff maintains he furnished defendant with an invoice to International Metals and a bill of lading from Accurate Perforating Company, Inc., well in advance of the deadline and that the documentation he furnished was not substantially different from the previous transactions when defendant honored its credits. Plaintiff also argues defendant violated its duty to him by not informing him of its decision to dishonor the credit.
In the preamble to the judgment, the trial judge stated it was his opinion that plaintiff timely complied with the requirements of the letter of credit, that defendant's failure to honor the letter of credit was the result of the prospective failure of its customer, International Metals, and that plaintiff's performance and reliance upon the credit entitled him to recover.
The evidence introduced by both sides leaves much to be desired. This is probably explained by plaintiff's inexperience as a layman representing himself in the trial court and by the urgency caused by a hurricane scheduled to strike the Louisiana coast the evening of trial. Nevertheless, the evidence is sufficient for both the trial judge and this court to reach a valid decision.
Louisiana law on letters of credit is almost exclusively statutory.[3] It is derived basically from Article 5, of the Uniform Commercial Code in force in the other 49 states, the District of Columbia, and the Virgin Islands.[4]
A letter of credit is defined as "an engagement" by a bank made at the request of a customer that the issuer will honor drafts or other demands for payment upon compliance with the conditions specified in the credit.[5] It may call for a "documentary draft" conditioned upon the presentation of a document or documents to the bank issuing the credit.[6] As defined in the statute a "customer" is a buyer or other person who causes a bank to issue a credit,[7] and a "beneficiary" of a letter of credit is a person entitled under its terms to draw or demand payment.[8]
No consideration is necessary to establish a letter of credit.[9] In the absence of contrary agreement, the credit is established in relation to the beneficiary when he receives a letter of credit or an authorized written advice of its issuance.[10] Once an irrevocable letter of credit is established for the beneficiary it can be modified or revoked only with his consent.[11] An issuing bank *735 must honor a draft or demand for payment which complies with the terms of the letter of credit regardless of whether the goods or documents conform to the underlying contract between the bank's customer and the beneficiary.[12] Hence, if the documents appear on their face to comply with the terms of a credit, the issuing bank must honor a draft or demand for payment by a negotiating bank or other holder taking the draft or demand under the credit and under circumstances which would make it a holder in due course, by a person to whom a document of title has been negotiated, or by a bona fide purchaser of a security.[13] In all other cases, an issuing bank acting in good faith may honor the draft or demand for payment despite notification from the customer of fraud, forgery, or other defect not apparent on the face of the document.[14]
The latter statutory rule is in conformity with the jurisprudence previously arising out of Louisiana which established that because a bank issuing a credit deals only in instruments and not in goods or merchandise, it is not concerned with the contract between its customer and the beneficiary, and it agrees only to honor drafts drawn and negotiated in strict compliance with the letter of credit.[15] Present statutory law is likewise in conformity with previous Louisiana jurisprudence that a bank issuing an irrevocable credit is absolutely liable to the drawer making demand in accordance with the terms of the credit even though the bank was not paid by its customer.[16] Moreover, jurisprudence arising from Louisiana has established that a bank's evaluation of whether supporting documents submitted to it are in conformity with requirements of the credit is subject to judicial review as to reasonableness.[17]
The first issue we face is whether the plaintiff acted timely in presenting documentation under the letter of credit to defendant. Neither party has cited legal authority expressly authorizing an issuer to place a time limit on a letter of credit; however, Louisiana law authorizes a credit to specify conditions.[18] and we hold a time limit is a reasonable if not a necessary condition of a letter of credit.
Plaintiff testified that on or about July 7, 1976 he mailed to defendant his invoice on International Metals dated July 7, 1976 and a copy of a bill of lading from Accurate Perforating Company, Inc. evidencing the sale of 39,630 pounds of aluminum punchings. He mailed these documents by ordinary mail. He discussed non-payment with defendant's employee prior to July 9, 1976. When told defendant contended it had not received the documents, he caused an employee of International Metals to deliver copies of the documents to defendant before July 12, 1976, the deadline stated in the credit. Plaintiff did not send the documents by certified mail, and he could not produce a cover letter at trial. He nevertheless testified that on the prior occasions[19] when he dealt with International Metals by means of defendant's letter of credit, he handled the documentation in precisely the same manner as he did in the present transaction, and he was paid in due course without difficulty. The employee of the defendant bank who handled the transaction possessed no recollection whatever of the time sequence.
Plaintiff could not support his testimony with other evidence to show when he *736 mailed the documentation, but his testimony is unequivocal and essentially uncontradicted. Moreover, that testimony is supported by implication in portions of the testimony offered by the bank's employee when she testified, as will be discussed more fully below, that she consulted with a principal of International Metals to ascertain whether the documentation furnished the bank by plaintiff conformed with the underlying contract between International Metals and plaintiff. Accordingly, we find the trial court's finding of timeliness must stand.
The second issue for our consideration also is purely factual. The trial judge found defendant's failure to honor the credit was caused by the impending failure of International Metals. The record shows the financial dealings of International Metals' principal, Sol Sieger, were being probed by the Federal Bureau of Investigation at the time of the transaction in dispute. Moreover, the bank had not been paid by International Metals for the issuance of the credit.[20] Defendant's personnel were aware of the F.B.I. investigation. Eventually Sieger was indicted and convicted regarding a transaction with an Oklahoma firm involving interstate fraud. Hence, the record, in some measure, supports the trial judge's finding of the bank's motivation for not honoring the letter of credit. We agree with that finding.
The final question for our determination is whether plaintiff's reliance on the letter of credit entitled him to recover from defendant even though the record clearly establishes he did not precisely comply with the letter's stated requirements. While plaintiff furnished invoice and bill of lading, he did not furnish a sight draft drawn on the defendant. However, the evidence is equally clear defendant did not require strict compliance with requirements in letters of credit issued plaintiff in previous dealings.
The witness who handled the bank's letters of credit testified that while she was a defendant employee at least two previous irrevocable letters of credit issued to plaintiff were honored, and plaintiff was paid for the account of International Metals, even though the documentation furnished by him did not strictly or properly comply with the terms of each credit issued. For example, a letter of credit dated May 26, 1976 in the amount of $28,000 was paid even though no sight draft was drawn on defendant and two invoices sent by plaintiff did not properly conform to the credit. The transaction most closely in compliance with documentation requirements involved a credit dated March 16, 1976 for the amount of $12,000. That letter of credit contained basically the same documentary requirements as did the one in suit, and plaintiff supplied defendant with an invoice and sight draft issued by his Denver bank. The evidence offered by defendant did not establish plaintiff furnished the required bills of lading, but nevertheless defendant honored its letter of credit in the exact amount of plaintiff's invoice to International Metals.
Because there is little jurisprudence on letters of credit in Louisiana, defendant cites the New York case of Bounty Trading Corporation v. S.E.K. Sports Wear[21] as authority for the rule that a bank is entitled to dishonor a letter of credit when its beneficiary fails to present a sight draft in accordance with its conditions. In holding for the bank, the Bounty Trading Corporation court stated:
"Since the terms and conditions of a letter of credit must be strictly adhered to, plaintiff is not entitled to the funds secured thereby."
It would appear that in the transaction now before us, the requirement of presentation of a sight draft, even though contained in the letter of credit, is for the benefit of the issuing bank rather than for the bank's *737 customer. Thus, insofar as the distinction between a sight draft and a demand for payment is concerned, the bank's statutory duty to its customer to examine documents with care to ascertain that on their face they appear to comply with the terms of the credit[22] seems to be mitigated. Nevertheless, for the sake of this opinion we assume the bank is entitled to require a sight draft instead of a demand for payment if presentation of a sight draft is a condition in the credit as allowed by law.[23]
Having made this assumption, the defendant would seem to be entitled to judgment. However, Louisiana law allows application of other appropriate legal principles when necessary. Specifically, R.S. 10:5-102(3) provides as follows:
"This Chapter deals with some but not all of the rules and concepts of letters of credit as such rules or concepts have developed prior to this act or may hereafter develop. The fact that this Chapter states a rule does not by itself require, imply or negate applications of the same or a converse rule to a situation not provided for or to a person not specified by this Chapter." LSA-R.S. 10:5-102(3).
We interpret this provision to mean that the chapter on letters of credit does not attempt to be sui juris, but instead allows application of other legal principals "to a situation not provided for" therein. The case before us is one for the application of the doctrine of estoppel, and we conclude the quoted statutory provision allows its application in this case since the chapter covering letters of credit[24] is totally silent on estoppel by previous actions. It is important to note, moreover, that neither party has referred to any authority precluding application of the doctrine of estoppel to issuers of letters of credit, and our own independent research likewise has revealed no such jurisprudence.
It is well settled in Louisiana that when a party with full knowledge of the facts has acted or conducted himself in a particular manner, he cannot afterward assume a position inconsistent with his previous behavior to the prejudice of one who has acted in reliance on such conduct.[25]
The defendant bank was well acquainted with the legal and commercial practice applicable to letters of credit, and it was entitled to demand strict compliance with the conditions stated in the letters of credit issued to plaintiff. Nevertheless it chose not to require strict compliance with these conditions so long as mere substantial requirement did not conflict with the bank's own interests. However, after completing two or three transactions involving issuance of credits for International Metals to fund a sale from plaintiff, the bank assumed a position totally inconsistent with its prior actions by insisting on strict compliance with the conditions of the credit. Whether defendant received no consideration or anticipated receiving no consideration, its previous course of action in demanding only substantial requirement with conditions of earlier letters of credit caused plaintiff to act in reliance on the anticipation that the bank would not suddenly insist on exact and precise requirements with the conditions of the credit. While the bank can impose conditions in the credit and demand complete compliance with them, it cannot, in a series of dealings based upon credits, arbitrarily select those credits which must conform to the requirements therein stated and those which may be paid without complete compliance. If it chooses to demand complete compliance with the stated conditions at a later date, its future intent should and must be conveyed in time for the beneficiary to comply therewith. The record *738 discloses only that, upon plaintiff's calling the bank, it conveyed the information that it had not received the documentation. At no time did it notify plaintiff the documentation did not comply with the terms of the credit, and we hold plaintiff was fully justified in assuming that the documents timely delivered by him were sufficient to justify payment as they had in the past.
Defendant's final contention is ancillary to its argument that plaintiff did not supply a sight draft. It argues that a substantial discrepancy existed between the terms of the credit and the bill of lading which plaintiff furnished from Accurate Perforating Company, Inc. This bill of lading referred to "aluminum punchings", while the letter of credit referred to "aluminum scrap." The employee of the bank who handled the transaction testified that upon receiving the bill of lading describing aluminum punchings she contacted International Metals' principal, Sol Sieger, who informed her the two items were different and demanded she refuse to honor plaintiff's demand under the credit. Assuming the truth of this statement, the opinion of the principal is not binding upon the defendant because the nature of a letter of credit requires that the bank make an independent determination based upon the face of the documents presented to it and not upon the underlying transaction.[26]
The vast majority of the jurisprudence concerned with letters of credit, particularly prior to the Uniform Commercial Code, came from the state of New York. The portion of the Uniform Commercial Code adopted in Louisiana pertaining to letters of credit retains the New York rule that when reasonable doubt exists whether documents conform with the requirements of a letter of credit, the issuing bank has a defense against either the customer or the beneficiary, if it honors or dishonors the draft or demand for payment provided the bank acts "within reason."[27]
However, the bill of lading from Accurate Perforating Company leaves grave doubt whether defendant acted within reason by dishonoring the letter of credit because plaintiff delivered "aluminum punchings." The bill of lading should show to a reasonable man that the object of the sale to International Metals was an accumulation of remnants left over after holes had been punched in aluminum. We cannot conceive of a clearer definition of "aluminum scrap" than remnants from punching holes in aluminum.
The letter of credit purports to incorporate the provisions of the Uniform Customs and Practice for Documentary Credits presented by brochure No. 222 of the International Chamber of Commerce. Brochure No. 222 has been superseded by brochure No. 290, revised April, 1975. Article 8 of the Uniform Customs and Practice brochure indicates that if the issuing bank considers the documents do not on their face appear to be in accordance with the terms and conditions of the credit, the bank may, after a reasonable time, make a claim toward dishonor of the draft. However, if a claim is to be made, the issuing bank must, without delay, inform the beneficiary by cable or other expeditious method, and such notice must state that the documents are being sent to the beneficiary or are being held at its disposal. Moreover, Article 8(f) provides that if the issuing bank fails to return the documents, it shall be precluded from claiming that the payment, acceptance, or negotiation was not effected in accordance with the terms and conditions of the credit.
The Uniform Customs and Practice brochure was not introduced into evidence, but we doubt whether it is necessary to introduce this document into evidence in view of the provisions of R.S. 10:5-102(3) *739 quoted above.[28] Moreover, the statutory law of Louisiana[29] allows the issuing bank three banking days following receipt of the documents to defer honor and further provides that upon dishonor the bank may "fulfill its duty to return the draft or demand and the documents" by holding all of them at the disposal of the presenter and sending him an advice to that effect. There is no doubt the defendant did not inform plaintiff of its decision to dishonor and likewise did not return the documents to him. Taking as true plaintiff's testimony that he placed the documents in the mail to defendant bank on July 7, he would have been able to remedy defects in the documentation by July 12, even if the bank had waited three full banking days, assuming it was not barred by estoppel from dishonoring its credit for the reasons stated above. We therefore hold the defendant did not fulfill its duty to plaintiff as set forth in R.S. 10:5-112(2), with the result that it deprived plaintiff of an opportunity to present defendant with documentation reasonably acceptable to it.
It is noteworthy that in each case cited by defendant as authority for the rule that dishonor is proper when the documentation is not in strict compliance with the terms of the credit, there was a prompt notification by the issuing bank to the beneficiary that the documentation was not acceptable and the documentation was immediately returned to the beneficiary.[30]
For the reasons assigned, the judgment appealed from is affirmed.
AFFIRMED.
NOTES
[1] The defendant bank additionally filed a peremptory exception based on the fact that the letter of credit was addressed to United Bank of Denver, and not the plaintiff. The record does not disclose any disposition of this exception, and the evidence adduced at trial indicates the plaintiff requested the credit to be executed in this manner since United Bank of Denver was his bank. We consequently conclude the exception was abandoned by defendant.
[2] A witness formerly employed by International Metals testified "aluminum punchings" furnished by plaintiff were scrap aluminum as required by the letter of credit.
[3] There is very little jurisprudential law on the subject in Louisiana.
[4] See Comment to R.S. 10:1-101.
[5] R.S. 10:5-103(1)(a).
[6] R.S. 10:5-103(1)(b).
[7] R.S. 10:5-103(1)(g).
[8] R.S. 10:5-103(1)(d).
[9] R.S. 10:5-105.
[10] R.S. 10:5-106(1)(b).
[11] R.S. 10:5-106(2).
[12] R.S. 10:5-114(1).
[13] R.S. 10:5-114(2)(a).
[14] R.S. 10:5-114(2)(b). Under these circumstances, the bank's customer may apply to a court of competent jurisdiction to enjoin honor of such a draft or demand. Id.
[15] Sisalcords do Brazil, Ltd. v. Fiacao Brasileria de Sisal, S.A., 450 F.2d 419, cert. denied 406 U.S. 919, 92 S.Ct. 1771, 32 L.Ed.2d 118.
[16] See Vivacqa Irmaos, S.A. v. Hickerson, 193 La. 495, 190 So. 657.
[17] Bank of America v. Whitney Central National Bank, 291 F. 929, cert. denied 264 U.S. 598, 44 S.Ct. 331. 68 L.Ed. 869.
[18] R.S. 10:5-103(1)(a).
[19] The record is unclear as to whether defendant issued plaintiff letters of credit on two or three previous occasions.
[20] Failure of consideration is not a defense to non-payment to a beneficiary under an established letter of credit. R.S. 10:5-105, supra, note 9.
[21] 48 A.D.2d 811, 370 N.Y.S.2d 4.
[22] R.S. 10:5-109(2).
[23] See R.S. 10:5-103(1)(a).
[24] R.S. 10:5-101 through 5-117.
[25] See Fred Miller Brewing Co. v. Ascension Ice Co., 128 La. 779, 55 So. 369; Westenberger v. State, Department of Education, La.App., 333 So.2d 264: United States Rubber Company v. Ball, La.App., 153 So.2d 203; Phillips v. Mid-Continent Life Insurance Company, La. App., 130 So.2d 791; and Carpenter v. Madden, La.App., 90 So.2d 508.
[26] See note 2, supra. The lower court also had the benefit of testimony of a former employee of International Metals who explained aluminum punchings and aluminum scrap are the same thing.
[27] Schlessinger, 3 N.Y. State Law Revision Commission, 1955 Report 1634-1635 cited in White and Summers, Handbook of the law under the Uniform Commercial Code 622-623. See text accompanying Note 17, supra.
[28] See text after note 23, supra.
[29] R.S. 10:5-112.
[30] See Courtaulds North American, Inc. v. North Carolina National Bank, 528 F.2d 802 (4th Cir.); Banco Espanol de Credito v. State Street Bank & Trust Co., 266 F.Supp. 106 (D.C. Mass.); Marine Midland Grace Trust Co. of New York v. Banco del Pais, S.A., 261 F.Supp. 884 (D.C.N.Y.).