**EXCHANGE MUTUAL INSURANCE COMPANY, Plaintiff-Appellee,**

v.

**COMMERCE UNION BANK OF SUMNER COUNTY, Defendant-Appellant.**

Court of Appeals of Tennessee, Middle Section, at Nashville.

Dec. 12, 1984.

Application for Permission to Appeal Denied by Supreme Court March 4, 1985.

Gary S. Rubenstein, Schulman, LeRoy & Bennett, P.C., Nashville, for plaintiff-appellee.

Arthur E. McClellan, McClellan, Powers & Ehmling, P.C., Gallatin, for defendant-appellant.

OPINION

LEWIS, Judge.

This is an appeal by the defendant, Commerce Union Bank of Sumner County (Bank), from the decision of the Chancellor denying the Bank's motion for summary judgment and sustaining plaintiff, Exchange Mutual Insurance Company's, motion for summary judgment.[1]

This controversy arose when the Bank dishonored two drafts drawn on and presented pursuant to a letter of credit issued by the Bank in favor of the plaintiff beneficiary, Exchange Mutual Insurance Company.

The Bank contends that its dishonor of the drafts was justified because of plaintiff's failure to fulfill certain conditions precedent to payment in accordance with the letter. It argues that the granting of

---

**1.** Plaintiff styled its motion as a "MOTION FOR JUDGMENT ON THE PLEADINGS." However, in support of the motion, it relied not only on the pleadings, but also exhibits and affidavits. When matters outside the pleadings are present-ed to, and not excluded by, the court, then the motion for judgment on the pleadings pursuant to Tenn.R.C.P. 12.03 "shall be treated as one for summary judgment and disposed of as provided in Rule 56."

plaintiff's motion was inappropriate due to the fact that there are many factual issues in dispute which should have been considered by the Court. Plaintiff argues that the Bank's failure to state any reason for dishonoring the drafts violated the Bank's duty owed to the beneficiary under Tenn. Code Ann. § 47-5-112 and the terms of the letter itself. Plaintiff asserts that this breach of duty alone is at issue here and that any factual disputes regarding the underlying case are irrelevant to this appeal.

The facts out of which this controversy arose are as follows:

On August 23, 1977, defendant Bank issued an irrevocable letter of credit authorized by its customer, J & B Construction Company, in favor of the plaintiff, Exchange Mutual Insurance Company. The said letter of credit states the following:

IRREVOCABLE LETTER OF CREDIT NO. 106

Gentlemen:

We hereby establish our Irrevocable Letter of Credit in your favor and authorize you to draw on us, up to an aggregate amount of $100,000.00 (one hundred thousand dollars) available by your drafts at sight accompanied by your written certification that you, as Surety, have executed or have procured the execution of bonds or undertakings at the request of J & B Construction Co., and that you have incurred liability, or that a situation exists under which, in the sole judgment of the Surety, claim may be made for loss, cost or expense, and that monies represented by your drafts are required in the discretion of the Surety for its protection and for the protection of its co-sureties and re-insurers, if any, under said bonds or undertakings or under agreements of indemnity executed by J & B Construction Co.

We engage with you that all drafts drawn under and in compliance with the terms of this credit will be duly honored by us as specified if presented at this office on or before August 23, 1978, or any extended date, it being a condition of this Irrevocable letter of Credit that it shall be automatically extended for additional periods of one year from the present of each future expiration date unless thirty days prior to such date we shall notify you in writing by registered mail at the above address, attention of "Surety Department", that we elect not to renew this letter of credit for such additional period. Upon receipt by you of such notice, you may draw on us hereunder by means of your draft on us at sight for the full amount of this letter of credit, accompanied by your written certification that you have not been released from liability and that the proceeds of you[r] draft will be applied by you to satisfy any loss, cost, or claim or expense which may be incurred by you, or your co-sureties, or re-insurers, if any, as a result of having executed or having procured the execution of bonds or undertakings as aforesaid, or under agreements of indemnity as aforesaid.

Your acceptance of this Credit will constitute your agreement to repay to us any funds paid by us to you hereunder and not used by you in satisfaction of or reimbursement of any loss, cost, claim or expense of any nature whatsoever incurred by you, (including unpaid premiums), on any such bonds or undertakings or agreements of indemnity as aforesaid. Except so far as otherwise expressly stated, this Credit is subject to the Uniform Customs and Practices for Commercial Documentary Credits fixed by the International Chamber of Commerce applicable at the date of this letter.

In accordance with its terms, the letter was automatically renewed on each anniversary prior to 1982. On July 23, 1982, however, one month before the expiration date, defendant Bank sent a letter informing plaintiff that it had decided not to renew the letter for any additional period.

On July 22nd, one day before the Bank's letter was written, plaintiff sent a draft to the Bank in the amount of $76,718.20, accompanied by a copy of the irrevocable letter of credit. On August 2, 1982, the Bank, through its attorney, responded to plaintiff's July 22nd draft notifying plain-

tiff of its dishonor of the draft on account of plaintiff's failure to comply with certain conditions precedent set forth in the letter of credit.[2]

Thereafter, on August 11, 1982, plaintiff presented a second draft in the amount of $23,281.80, making the total of the two drafts presented to the Bank $100,000.00. The letter made direct reference to the first draft and stated that with the tendering of the second draft, plaintiff had drawn the entire $100,000.00 available pursuant to the letter of credit. The letter also made reference to portions of the letter of credit in an attempt to comply with the conditions and requirements therein.

On August 31, 1982, eight days after the expiration of the letter of credit, the Bank notified plaintiff that the terms and conditions of the contract had not been met and that the Bank refused to pay either of the drafts presented. No further explanation was given.[3]

The Bank contends that it was justified in refusing to honor the drafts because the conditions precedent set forth in the letter of credit were never met. It cites authority for the position that a bank must honor drafts on a letter of credit only if the drafts are accompanied by documents in proper form called for in the letter. It argues that there are many factual issues in dispute and, therefore, the granting of a motion for summary judgment in plaintiff's favor was inappropriate.

The Chancellor based his decision on the Bank's failure to give any reason or explanation for dishonoring the drafts, not on any consideration of underlying facts, which we recognize may be in dispute. This dishonor, coming as it did after the

expiration of a letter of credit, did not allow plaintiff an opportunity to remedy the defect claimed. There is no factual dispute regarding the Bank's failure to inform the plaintiff of the nature of the problem in a timely fashion, and it is this fact alone which is an issue in this appeal. Thus, the Bank's argument that the Chancellor was in error in granting plaintiff's motion is without merit.

Plaintiff contends that the Bank, by failing to provide an adequate explanation for its actions, has thereby waived its right to rely upon the alleged defects and is therefore estopped from claiming the right to dishonor payment. Plaintiff argues that the Bank had a "duty" to provide the beneficiary with an opportunity to cure the defect. This claim is based in part on Tenn. Code Ann. § 47–5–112(2) which states: "Upon dishonor the bank may unless otherwise instructed fulfill its duty to return the draft or demand and the documents by holding them at the disposal of the presenter and sending him an advice to that effect." A review of the record reveals that the Bank never returned the draft or the documents to plaintiff and did not "provide the advice to the effect [of dishonor]" until after the expiration date.

Plaintiff's claim as to the Bank's duty is also based on Article 8 of the Uniform Customs and Practices for Commercial Documentary Credits, which both parties agree was incorporated by reference into the letter of credit. The pertinent sections of Article 8 are as follows:

c. If, upon receipt of the documents, the issuing bank considers that they appear on their face not to be in accordance with the terms and conditions of

2. Dear Sir:
Please be advised that Exchange Mutual Insurance Company's draft dated June 22, 1982, will not be honored by Commerce Union Bank of Sumner County for failure to comply with the conditions set forth in the letter. We will hold the draft until such time as the terms of the letter are complied with.

3. Dear Mr. Rubenstein:
Please be advised that Mr. Scott has given me your letter of August 11, 1982, for response. I

have exemined the July 22nd letter of Wayne LeRoy, as well as your letter, and it is my conclusion that you failed to comply with the terms of the Irrevocable Letter of Credit No. 106. Therefore, please be advised that for that reason, as well as others too numerous to list here, Commerce Union Bank will not pay either of the drafts previously presented in as much as they fail to conform with the requirements of the letter.

the credit, that bank must determine, on the basis of the documents alone, whether to claim that payment, acceptance, or negotiation was not effected in accordance with the terms and conditions of the credit.

d. The issuing bank shall have a reasonable time to examine the documents and to determine as above whether to make such a claim.

e. If such claim is to be made, notice to that effect, stating the reasons therefor, must, without delay, be given by cable or other expeditious means to the bank from which the documents have been received (the remitting bank) and such notice must state that the documents are being held at the disposal of such bank or are being returned thereto.

f. If the issuing bank fails to hold the documents at the disposal of the remitting bank, or fails to return the documents to such bank, the issuing bank shall be precluded from claiming that the relative payment, acceptance or negotiation was not effected in accordance with the terms and conditions of the credit.

The Bank claims that its letters of August 2nd and August 31st, stating simply that the drafts "failed to comply with the conditions set forth," provided all the information necessary for compliance both with the statute and the Uniform Rules. We disagree.

As the Chancellor recognized, plaintiff's attorney made an attempt to address the defects and comply with the conditions of the letter of credit in the letter accompanying the second draft dated August 11, 1982. The letter states in part as follows:

Wherefore, reference is now made to the second paragraph of that irrevocable letter of credit that states "Upon receipt by you of such notice, (your notice dated July 23, 1982 that you will not renew the letter of credit) you may draw on us hereunder by means of your draft on us at site for the full amount of this letter of credit accompanied by your written certification that you have not been released from liability and that the proceeds of your draft will be applied by you to satisfy any loss, cost or claim or expense which may be incurred by you or your co-sureties or re-insured, if any, as a result of having executed or having procured the execution of bonds or undertakings as aforesaid or under agreements of indemnity as aforesaid." Therefore, this letter is to certify to you that Exchange Mutual Insurance Company has not been released from liability and that the proceeds of this draft will be applied by my client to satisfy any loss, cost or claim or expense which may be incurred by Exchange Mutual Insurance Company.

This letter is also to certify to you that not only will this draft be used pursuant to paragraph 2 of the irrevocable letter of credit but also that any funds not used by Exchange Mutual in satisfaction of or reimbursement of any loss, cost, claim or expense will be repaid to Commerce Union Bank of Sumner County, Tennessee. Therefore, with the tendering of the draft herein enclosed, Exchange Mutual Insurance Company has drawn on the entire $100,000.00 that is available pursuant to the irrevocable letter of credit No. 106. Let me repeat that once Exchange Mutual Insurance Company has been released from liability that it will return any surplus funds to you, but by the terms of your irrevocable letter of credit, we must draw on the balance remaining in the amount of $23,281.80. If you have any questions with regard to this matter, please do not hesitate to contact myself or Mr. W. Wayne LeRoy of this firm.

It is most significant to note here that the Bank's dishonor and response to this second draft and letter, dated August 31st, came some eight days after the expiration of the letter of credit on August 23rd. This response can hardly be considered "without delay ... by cable or other expeditious means."

We have found no Tennessee case which has dealt with the issue of the extent of a

bank's duty to the beneficiary to spell out the deficiencies in a draft pursuant to a letter of credit. Other jurisdictions, however, which have dealt with the issue have held banks to a high standard.

In *Schweibish v. Pontchartrain State Bank,* 389 So.2d 731 (La.App.1980), in a fact situation similar to the one here, plaintiff beneficiary filed suit against defendant bank to recover under an irrevocable letter of credit. The bank, in cancelling credit, alleged that the plaintiff beneficiary failed to comply with terms of the letter of credit by not furnishing certain evidence called for by the terms. However, the bank in that case failed to inform the beneficiary of its decision to dishonor and failed to return the documents in time for him to address the problem. The court held that since the bank had deprived the beneficiary of an opportunity to present acceptable documentation, it was estopped from claiming dishonor on grounds that the documents presented were not in strict compliance with the terms. *Id.* at 739.

In *Crocker Commercial Services, Inc. v. Countryside Bank,* 538 F.Supp. 1360 (N.D. Ill.1981), the bank refused payment under a letter of credit claiming that the beneficiary had not complied with the terms. The bank also failed to identify the claimed deficiencies, and the beneficiary was not able to cure. The court held that by standing by silently and letting the letter of credit expire without full identification of the deficiencies, the bank effectively robbed the beneficiary of an opportunity to cure. The court viewed the conduct as creating "either a waiver or an estoppel" to bar the bank's purported defenses. *Id.* at 1363. *See also American Employers Insurance Co. v. Pioneer Bank & Trust Co.,* 538 F.Supp. 1354 (N.D.Ill.1981).

We hold that the Bank here was also under an obligation to provide the beneficiary with a prompt and complete explanation of why it refused to honor the drafts drawn on the letter of credit. To hold otherwise would serve to undermine an important purpose behind the Uniform Customs and Practices for Commercial Documentary Credits incorporated here by reference to simplify and facilitate the fairness of such credit arrangements.

The judgment of the Chancellor is in all things affirmed with costs assessed against the Bank and the cause remanded to the Chancery Court for the collection of costs and any further necessary proceedings.

CANTRELL and KOCH, JJ., concur.