United States Court of Appeals,

Eleventh Circuit.

No. 95-4444.

BANCO GENERAL RUNINAHUI, S.A., Plaintiff-Counter-Defendant-Appellant,

v.

CITIBANK INTERNATIONAL, a division of Citibank, N.A., New York, Defendant-Third-Party Plaintiff-Counter-Defendant-Appellant,

R.M. WADE & CO., d.b.a. Wade Mfg. Co., Third-Party Defendant-Counter-Claimant-Appellee.

Oct. 10, 1996.

Appeals from the United States District Court for the Southern District of Florida. (No. 93-43-CIV-UUB), Ursula Ungaro Benages, District Judge.

Before TJOFLAT and BLACK, Circuit Judges, and REAVLEY[*], Senior Circuit Judge.

BLACK, Circuit Judge:

Appellants Citibank International (Citibank) and Banco General Runinahui, S.A. (Banco) appeal the district court's entry of summary judgment in favor of R.M. Wade & Co. (Wade), arguing the court improperly concluded Citibank had wrongfully dishonored nonconforming documents Wade presented under the second of two letters of credit issued by Banco in favor of Wade and subsequently confirmed by Citibank. We affirm the district court's judgment as to all claims except those of Appellants contending the court erred in finding Citibank barred from dishonoring the documents Wade presented under the second letter of credit.[1]

_____

[*]Honorable Thomas M. Reavley, Senior U.S. Circuit Judge for the Fifth Circuit, sitting by designation.

[1]There were two presentments under the second letter of credit. The district court granted summary judgment in favor of

I. BACKGROUND

*Commercial Letter of Credit*

The commercial letter of credit is a payment device often used in international trade which permits a buyer in a transaction to substitute its financial integrity with that of a stable credit source, usually a bank. *Alaska Textile Co., Inc. v. Chase Manhattan Bank, N.A.,* 982 F.2d 813, 815 (2d Cir.1992). As described by the Second Circuit:

> In its classic form, the letter of credit is only one of three distinct relationships between three different parties: (1) the underlying contract for the purchase and sale of goods between the buyer ("account party") and the seller ("beneficiary"), with payment to be made through a letter of credit to be issued by the buyer's bank in favor of the seller; (2) the application agreement between the [issuing] bank and the buyer, describing the terms the issuer must incorporate into the credit and establishing how the bank is to be reimbursed when it pays the seller under the letter of credit; and (3) the actual letter of credit which is the bank's irrevocable promise to pay the seller-beneficiary when the latter presents certain documents (e.g., documents of title, transport and insurance documents, and commercial invoices) that conform with the terms of the credit.

*Id.*

In some letters of credit, another bank, known as the confirming bank, assumes the same obligations as the issuing bank. *See* Fla.Stat. § 675.107(2) (1995) (a bank that confirms a credit becomes "directly obligated on the credit to the extent of its confirmation as though it were its issuer....").

The key to the commercial vitality of the letter of credit is

Wade as to the first presentment but denied it as to the second on the basis that Wade had knowingly misstated the amount due under the second presentment by including the amount Citibank refused to pay on the first. Since Wade has not appealed this holding, we will address only the first presentment under the second letter of credit.

its independence: it is wholly separate and distinct from the underlying contract. When the beneficiary submits documents to the issuing/confirming bank, the bank's only duty is to examine the documents and determine whether they are in accordance with the terms and conditions of the credit. *Dibrell Bros. Int'l, S.A. v. Banca Nazionale Del Lavoro,* 38 F.3d 1571, 1579 (11th Cir.1994). If the bank finds the documents to be conforming, it is then obligated to honor a draft on the credit, independent of the performance of the underlying contract for which the credit was issued. *Marino Indus. Corp. v. Chase Manhattan Bank, N.A.,* 686 F.2d 112, 115 (2d Cir.1982) ("It is the complete separation between the underlying commercial transaction and the letter of credit that gives the letter its utility in financing transactions"); *Pro-Fab, Inc. v. Vipa, Inc.,* 772 F.2d 847, 852-53 (11th Cir.1985) ("The bank is obligated to look only to the requirements of the letter of credit, not to any other activity between the parties.")

The Uniform Customs and Practices for Documentary Credits (UCP), first issued in 1930 by the International Chamber of Commerce and revised approximately every ten years since, is a compilation of internationally accepted commercial practices which may be incorporated into the private law of a contract between parties. *Alaska Textile,* 982 F.2d at 816. Although it is not the law, the UCP applies to most letters of credit because issuers typically incorporate it into their credits. *Id.*

*Facts*

Wade engages in the business of manufacturing and marketing irrigation products. In September 1991, Ribadalgo Agro Consultores

CIA Ltd. [Ribadalgo], Wade's Ecuadorian distributor, entered into a contract with Wade for the purchase of a Wade irrigation system. The parties agreed that a commercial letter of credit governed by the UCP, Int'l Chamber of Commerce Pub. No. 400 (1983 Revision) (UCP 400) would be used to finance Ribadalgo's purchase of the irrigation system from Wade.

*First Letter of Credit*

On November 14, 1991, Ribadalgo obtained an irrevocable letter of credit from Banco, a banking institution with its principal place of business in Quito, Ecuador. The letter of credit was in the amount of $446,000, and named Wade as the beneficiary. The material terms of the letter of credit were that Wade was to ship certain of the irrigation equipment by December 31, 1991; Wade was to present the request for payment, including all the requisite documents "no later than 15 days after shipment, but within the validity of the credit"; and the letter of credit was valid through January 28, 1992, the expiry date. Citibank, which does business in Miami, Florida, confirmed the letter of credit upon Wade's request after Banco deposited $446,000 cash as collateral.

Wade shipped the goods on December 31, 1991, and subsequently presented the requisite documents to Citibank for payment on January 14, 1992. The documents contained numerous discrepancies, but Citibank honored Wade's request for payment on January 22, 1992, without noting any deficiencies.

*Second Letter of Credit*

In April 1992, Banco issued another irrevocable letter of credit to Ribadalgo in the amount of $400,000, again naming Wade as

the beneficiary. The terms of this letter of credit were that Wade was to ship certain of the irrigation equipment by June 30, 1992; Wade was to present the request for payment, including all the requisite documents "no later than 15 days after shipment, but within the validity of the credit"; the expiry date of the credit was August 4, 1992; and partial shipments were acceptable. After Banco deposited $400,000 cash as collateral, Citibank confirmed the letter of credit. Thereafter, the letter of credit was amended to extend the shipment date to July 30, 1992, and the expiry date to August 21, 1992, and change the port of discharge. All remaining terms were unchanged.

Wade timely shipped a portion of the goods on July 7, 1992. On July 21, 1992, one day before the document presentment deadline, Wade presented the requisite documents to Citibank, requesting payment under the terms of the credit for the shipped merchandise.[2] Two days later, on July 23, 1992, Citibank informed Wade that the documents submitted contained numerous discrepancies and that it therefore would not honor Wade's request for payment. [3] In response, Wade forwarded amended documents to Citibank on July 24, 1992, and July 27, 1992. Although Citibank conceded the documents as amended contained no discrepancies, it nevertheless rejected

---

[2]Meanwhile, on July 17, 1992, the Ecuadorian Criminal Investigations Department issued an order freezing all Ribadalgo's assets and precluding payment on any lines of credit made available to Ribadalgo due to alleged drug trafficking. Four days later, the Ecuadorian Department of Banking entered an order barring Banco from making payment under the letter of credit. In turn, Banco advised Citibank not to honor any request for payment made by Wade thereunder.

[3]Although Wade disputes some of the discrepancies alleged by Citibank, it concedes the documents were nonconforming.

them as untimely because they were not received within 15 days of shipment as required under the terms of the credit.

## II. ISSUES PRESENTED

There are three issues raised by the parties in this appeal which merit our consideration:[4] (1) whether Wade is entitled to payment under the second letter of credit because it submitted conforming documents before the expiry date of the credit; (2) whether the district court erred in finding Citibank waived its right to require that Wade submit conforming documents under the second letter of credit; and (3) whether the district court erred in finding Citibank estopped from dishonoring Wade's nonconforming presentment under the second letter of credit.

## III. STANDARD OF REVIEW

We review district court rulings on summary judgment *de novo,* applying the same legal standards that bound the district court in rendering its decision. *Canadyne-Georgia Corp. v. Continental Ins. Co.,* 999 F.2d 1547, 1554 (11th Cir.1993).

## IV. DISCUSSION

A. *Document Presentment*

Appellants contend Citibank rightfully dishonored Wade's demand for payment under the second letter of credit because Wade did not submit conforming documents as required under the terms of the credit. The letter of credit provided that documents had to be

---

[4]Banco also claims error on the part of the district court in refusing to find it excused from making payment on the letter of credit on the following grounds: (1) illegality of performance; (2) the act of state doctrine; and (3) principles of international comity. We affirm the district court's judgment on these bases pursuant to our Eleventh Circuit Rule 36-1.

presented "no later than 15 days after shipment, but within the validity of the credit."  It is this provision which is the source of dispute.

This Court has recognized and applied the "strict compliance" standard to requests for payment under commercial letters of credit:

> Under Florida law, letters of credit are subject to a rule of "strict compliance."  Documents presented for payment must precisely meet the requirements set forth in the credit.... If the documents do not on their face meet the requirements of the credit, the fact that a defect is a mere "technicality" does not matter.

*Kerr-McGee Chem. Corp. v. FDIC,* 872 F.2d 971, 973 (11th Cir.1989) (citations omitted).

Wade does not challenge the applicability of this standard,[5] but disputes *when* the submitted documents had to be in strict compliance with the terms of the credit.  Wade argues the documents did not have to be conforming before the presentment deadline, but only before the expiry date of the credit. [6]  Specifically, Wade interprets the phrase "no later than 15 days after shipment, but

---

[5]Wade does argue, however, that Citibank waived its right to insist upon strict compliance based upon advice allegedly given by Citibank's employee to Wade's freight forwarder.  Since Wade raises this issue for the first time on appeal, we decline to consider it.  *See Marsden v. Moore,* 847 F.2d 1536, 1548 (11th Cir.), *cert. denied,* 488 U.S. 983, 109 S.Ct. 534, 102 L.Ed.2d 566 (1988).

[6]*See First Nat'l Bank of Council Bluffs v. Rosebud Housing Auth.,* 291 N.W.2d 41, 46 (Iowa 1980) ("Upon becoming aware the first documentation furnished was improper, Rosebud had a right to remedy the defect before the expiration of the credit");  *Bank of Cochin Ltd. v. Manufacturers Hanover Trust Co.,* 612 F.Supp. 1533, 1542 (S.D.N.Y.1985) ("The UCP also implicitly invites cure of any documentary deficiencies apparent before the letter of credit expiration by issuer notification to the beneficiary"), *aff'd,* 808 F.2d 209 (2d Cir.1986).

within the validity of the credit" to mean it was required to initially submit documents "no later than [July 22, 1992]," but that between the presentment deadline and the expiry date of the credit there was a "cure period" during which it could remedy any deficiencies contained in the initial presentment. Since Wade initially submitted its documents within the 15-day presentment period and thereafter cured the discrepancies before the expiry date, it maintains it was entitled to receive payment.[7]

A rule such as that suggested by Wade would reduce the function of the document presentment deadline to a mere benchmark for the initial submission of documents, no matter how discrepant. It would permit beneficiaries to make only half-hearted presentments, forcing banks to waste time reviewing discrepant documents submitted in anticipation of the opportunity to cure defects before the "real deadline," the expiry date. Enabling a beneficiary to enjoy an unrestricted right to cure deficiencies before the expiration of the credit would render the document presentment deadline virtually meaningless and effectively subvert the strict compliance standard.

----

[7]No court has considered the question of when submitted documents must be in strict compliance with the terms of the credit in the event such terms provide for a document presentment deadline in advance of the expiry date. The authorities cited by Wade are factually distinguishable from this case. In *First Nat'l,* there was no stated document presentment deadline; documents simply had to be presented with the demand for payment under the letter of credit. 291 N.W.2d at 43. Similarly, in *Bank of Cochin,* the district court analyzed the letter of credit in terms of a shipment deadline and credit expiry date, without discussing a separate document presentment deadline. 612 F.Supp. at 1535. In this case, by contrast, the terms of the letter of credit clearly provided for a document presentment deadline in advance of the expiry date.

Moreover, "the terms and conditions of a letter of credit must be strictly adhered to...." *Corporacion de Mercadeo Agricola v. Mellon Bank Int'l,* 608 F.2d 43, 47 (2d Cir.1979), and the terms of the letter of credit in this case made no provision for a "cure period" entitling Wade to limitless attempts at remedying deficiencies until the expiry date. Accordingly, under the terms of the credit in this case, we conclude that conforming documents had to be submitted by the presentment deadline in order to satisfy the strict compliance standard followed in this Circuit. Any right to cure would have arisen only if the documents had been submitted promptly enough to permit bank examination, notification of discrepancies, and a second submission all before the presentment deadline. Since Wade failed to submit conforming documents by the presentment deadline, Citibank was justified in dishonoring Wade's demand for payment.

B. *Waiver*

The district court found that although Citibank had a right to demand conforming documents in strict compliance with the terms of the second letter of credit, it waived its right in this case by its previous one-time acceptance of discrepant documents submitted by Wade under the first letter of credit.[8] We disagree.

The text of the UCP does not support the application of common

---

[8]No federal court has decided this precise issue under a letter of credit expressly incorporating the UCP. The district court relied solely upon the Louisiana state court decision, *Schweibish v. Pontchartrain State Bank,* 389 So.2d 731 (La.Ct.App.1980), *writ denied,* 396 So.2d 885 (La.1981). The *Schweibish* court cited no cases in support of its holding, hinging its decision only on equitable principles. 389 So.2d at 737-38.

law equitable doctrines such as waiver in letter of credit cases.[9]

Although we have observed that "equitable doctrines such as waiver and estoppel apply to these types of [letter of credit] transactions" under the Uniform Commercial Code (UCC), *Pro-Fab,* 772 F.2d at 851,[10] courts have been reluctant to accept claims of waiver in such cases. *See Courtaulds N. Am., Inc. v. North Carolina Nat'l Bank,* 528 F.2d 802, 807 (4th Cir.1975) ("Obviously, the previous acceptances of truant invoices cannot be construed as a waiver in the present incident");[11] *Texpor Traders, Inc. v. Trust Co. Bank,* 720 F.Supp. 1100, 1115 (S.D.N.Y.1989) (holding that merely because the account party "in one instance chose to waive discrepancies in the letter of credit ... does not require that it do so again, nor

_____

[9]Indeed, nothing in the UCP obligates or even permits a bank to examine documents presented under a letter of credit in relation to similar documents previously examined under a different letter of credit. Such a practice would undermine the UCP goals of certainty, promptness and finality in the context of an international banking system. *See Alaska Textile,* 982 F.2d at 815-16.

[10]*See also Dibrell Bros.,* 38 F.3d at 1581.

[11]Notably, Official Comment 7 to UCC Revised Article 5 provides in relevant part:

> Waiver of discrepancies by an issuer or an applicant in one or more presentations does not waive similar discrepancies in a future presentation. Neither the issuer nor the beneficiary can reasonably rely upon honor over past waivers as a basis for concluding that a future defective presentation will justify honor. The reasoning of *Courtaulds* ... is accepted and that expressed in *Schweibish* ... is rejected.

U.C.C.Rev. Art. 5, § 5-108 Official Cmt. 7 (1995).

UCC Revised Article 5 bears directly on the issues raised in this case because, unlike the original version, it incorporates the UCP approach to such concepts as notice of discrepancies and preclusion. *See generally* U.C.C.Rev. Art. 5, Prefatory Note.

does it authorize the issuing bank to similarly waive such discrepancies");[12] *Alpargatas, S.A. v. Century Business Credit Corp.,* 183 A.D.2d 491, 583 N.Y.S.2d 441, 442 ("The fact that defendant [applicant] may have waived strict compliance in the past does not justify an inference of a waiver of any discrepancies that might arise at some future point under another such letter"), *appeal dismissed,* 80 N.Y.2d 925, 589 N.Y.S.2d 312, 602 N.E.2d 1128 (1992), *appeal denied,* 82 N.Y.2d 655, 602 N.Y.S.2d 804, 622 N.E.2d 305 (1993). Against this background, there is no need for us to determine whether common law equitable doctrines such as waiver are applicable under letters of credit governed by the UCP,[13] because even were we to so find, the facts of this case simply would not

_____

[12]The district court attempted to distinguish *Texpor Traders* on the basis that the account party had waived the previous discrepancies in that case, not the bank. *See* 720 F.Supp. at 1115. From the perspective of the beneficiary, however, the source of the authority for the initial waiver is irrelevant. In either instance, the beneficiary finds out that although an earlier nonconforming submission of documents was accepted, a subsequent submission was rejected as discrepant.

[13]Since courts have been hesitant to find waiver under letters of credit incorporating the UCC, they will be as reluctant, if not more so, to find waiver under letters of credit governed by the UCP. *See Alaska Textile,* 982 F.2d at 820 ("Where, as here, a beneficiary presents documents under letters of credit that expressly incorporate the UCP as a template of rights and responsibilities, courts should be chary about altering the parties' relationship based on equitable doctrines such as waiver.") The UCC, which is supplemented by common law equitable doctrines, *see* U.C.C. § 1-103 (1967), and the UCP "adopt vastly different approaches" to nonconforming demands. *See Alaska Textile,* 982 F.2d at 822. For example, whereas common law estoppel is equitable, requiring a beneficiary to satisfy the traditional estoppel elements, the UCP 400 provides for a "strict estoppel" or mechanical "preclusion" penalty against a bank that fails to effect dishonor of discrepant documents in a timely fashion. *See* UCP 400 art. 16(e); *Kerr-McGee,* 872 F.2d at 973-74; *Alaska Textile,* 982 F.2d at 823. We are not convinced that the strict compliance standard under the UCP leaves any room for common law equitable doctrines such as waiver and estoppel.

support a waiver claim.[14]

We conclude that a significant showing would have to be made before parties to a letter of credit governed by the UCP would be found to have waived its express terms, *see Alaska Textile,* 982 F.2d at 820, and such a showing has not been made here. It would severely hamper large institutions, dealing in a myriad of complex international transactions, if a single failure to apply the strict compliance standard under a letter of credit were to result in the loss of the right to demand conforming documents in subsequent transactions with the same beneficiary. Citibank's single instance of accepting discrepant documents under the first letter of credit did not extinguish its right to demand conforming documents from Wade under the second letter of credit.

C. *Estoppel*

Appellants argue the district court also erred in finding Citibank estopped from dishonoring the nonconforming documents submitted by Wade. Article 16 of the UCP 400 provides in relevant part:

> c. The issuing bank shall have a *reasonable time* in which to examine the documents and to determine ... whether to take up or to refuse the documents.
>
> d. If the issuing bank decides to refuse the documents, it must give notice to that effect *without delay* by telecommunication or, if that is not possible, by other expeditious means....
>
> e. If the issuing bank fails to act in accordance with the [above] provisions ... the issuing bank shall be precluded

---

[14]We recognize that the Second Circuit has found the equitable doctrines of waiver and estoppel applicable under letters of credit governed by the UCP, *see Alaska Textile,* 982 F.2d at 820, but we need not reach this issue under the facts of this case.

from claiming that the documents are not in accordance with the terms and conditions of the credit.

UCP 400 art. 16(c)-(e) (emphases supplied).

The two inquiries are sequential: an issuing/confirming bank is entitled to a "reasonable time" in which to examine documents; then, if it decides to refuse them, it must give notice to that effect "without delay." Here, Wade made its initial presentment of documents to Citibank one day before the presentment deadline, and Citibank advised Wade the documents were nonconforming by telephone two days later. The district court found that Citibank had not examined Wade's documents within a "reasonable time" and had not notified Wade of the discrepancies "without delay."[15]

"In the letter-of-credit context, "[w]hat is a "reasonable time" is to be determined by examining the behavior of those in the business of examining documents, mostly banks,' " *Alaska Textile,* 982 F.2d at 823 (quoting U.C.C.Rev. Art. 5, § 5-108 Official Cmt. 2 (1995)), and requires an analysis of the "nature, purpose, and circumstances of each case." *Id.* In concluding Citibank had not reviewed the documents within a "reasonable time," however, it does not appear the district court examined banking behavior. Instead, the court focused on the limited time available to Wade to cure any

---

[15]Appellants maintain the questions of whether Citibank failed to act "within a reasonable time" and "without delay" were not before the district court on summary judgment, but instead were introduced into the case *sua sponte* by the court without the benefit of briefing from the parties, affidavits directed to these issues, or other development of the record. On this basis, Appellants contend summary judgment in favor of Wade was inappropriate. Given our holding that the district court erred in finding Citibank estopped from dishonoring the discrepant documents submitted by Wade, it is unnecessary for us to resolve this issue.

discrepancies, reducing the entire inquiry to a question of the document presentment deadline:

> The relevant facts are that Wade submitted documents to Citibank on July 21, 1992, one day before the document presentment date, and that Citibank notified Wade's freight forwarding agent that the submitted documents were discrepant on July 23, 1992, one day after the expiration of the document presentment date.

The "reasonable time" requirement cannot be interpreted, as it was by the district court, to mean "early enough to allow the beneficiary to cure and represent the documents before the presentment deadline." The mere fact that the presentment period expired before the completion of Citibank's review and notification process does not compel any conclusion about whether Citibank spent a reasonable amount of time examining the documents.[16] A rule which required, in all circumstances, notice to the beneficiary of discrepancies before the passing of the document presentment date would conflict with Article 16(c) of the UCP 400 by stripping banks of their "reasonable time" to review documents.

Courts have interpreted "reasonable time" under the UCP 400 to mean at least three business days, *see, e.g., Occidental Fire & Casualty Co. v. Continental Bank, N.A.,* 918 F.2d 1312, 1318 & n. 3 (7th Cir.1990); and, although merely persuasive in this case, Article 13(b) of the UCP, Int'l Chamber of Commerce Pub. No. 500 (1993 Revision) (UCP 500) affords banks seven banking days to review documents and give notice of any discrepancies. Since Citibank not only reviewed the documents but also notified Wade by

---

[16]Indeed, the "reasonable time" requirement does not imply that banks must examine a presentation out of order or hurry a decision based upon particular needs or desires of a beneficiary. *See* U.C.C.Rev. Art. 5, § 5-108 Official Cmt. 2.

telephone of the discrepancies within just two days, we hold the district court erred in finding Citibank estopped from dishonoring Wade's nonconforming presentment.

## V. CONCLUSION

For the foregoing reasons, we reverse the judgment of the district court in finding Citibank barred from dishonoring Wade's nonconforming presentment under the second letter of credit. In all other respects, we affirm the district court's judgment. We remand the case for further proceedings consistent with this opinion.

AFFIRMED in part; REVERSED in part; and REMANDED.